1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

|  |  | Page(s) |
|---|---|---|
| EXHIBIT "A" | Plaintiff American General Life Insurance Company's Complaint For Declaratory Relief And Rescission | A1 - A47 |
| EXHIBIT "B" | Plaintiff Niketa Everett's Civil Action Complaint | B1 - B53 |
| EXHIBIT "C" | Plaintiff Niketa Everett's Application To Retain Jurisdiction And Enjoin Prosecution of Related Case | C1 - C123 |

19
**DEFENDANT'S MOTION TO DISMISS PURSUANT TO
FED.R.CIV.P. 12(b)(2) FOR LACK OF PERSONAL JURISDICTIONS**

USDC SDCA Case #08cv0740

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "A"

ORIGINAL

1  ADRIENNE C. PUBLICOVER (SBN 161432)
   WILSON, ELSER, MOSKOWITZ,
2     EDELMAN & DICKER LLP
   525 Market Street, 17th Floor
3  San Francisco, California 94105
   Telephone:   (415) 433-0990
4  Facsimile:   (415) 434-1370

5  Attorneys for Plaintiff
   **AMERICAN GENERAL LIFE**
6  **INSURANCE COMPANY**

7

8

9            UNITED STATES DISTRICT COURT

10          SOUTHERN DISTRICT OF CALIFORNIA

11                              '08 CV 740    W JMA

12  AMERICAN GENERAL LIFE INSURANCE   )   CASE NO.
    COMPANY,                          )
13                                    )   **PLAINTIFF AMERFICAN**
                 Plaintiff,           )   **GENERAL LIFE INSURANCE**
14                                    )   **COMPANY'S COMPLAINT FOR**
          v.                          )   **DECLARATORY RELIEF AND**
15                                    )   **RESCISSION**
    NIKETTA EVERETT and DOES 1-10,    )
16                                    )
                 Defendants.          )
17                                    )
                                      )
18                                    )

19       Plaintiff AMERICAN GENERAL LIFE INSURANCE COMPANY ("American

20  General"), a Texas corporation, alleges against Defendants NIKETTA EVERETT and DOES 1-

21  10 as follows:

22                  <u>JURISDICTION, VENUE AND THE PARTIES</u>

23       1.    The claims for relief contained in this Complaint are instituted, *inter alia*,

24  pursuant to 28 U.S.C. § 1332, 28 U.S.C. § 2201, *et seq.*, and pursuant to *Federal Rules of Civil*

25  *Procedure* 57, to obtain declaratory judgment.

26

27       **PLAINTIFF AMERFICAN GENERAL LIFE INSURANCE COMPANY'S**
28       **COMPLAINT FOR DECLARATORY RELIEF AND RESCISSION**
    USDC SDCA Case #

    301564.1

2.     American General is a corporation organized and existing under the laws of the State of Texas and at all times herein mentioned is a resident of Houston, Texas with its principal place of business in Houston, Texas; and at all times relevant to matters set forth herein, authorized to conduct business throughout the State of California.

3.     The policy of life insurance, which is the subject of this action, was applied for and issued in the State of California.

4.     American General is informed and believes, and on that basis alleges, that Defendant Niketta Everett was a citizen and resident of the State of California, and is presently living in Philadelphia, Pennsylvania at 6027 Race Street, Philadelphia, PA 19139.

5.     Original jurisdiction exists in this matter pursuant to 28 U.S.C. § 1332, federal diversity jurisdiction, as this action involves parties of diverse citizenship.

6.     This action involves an amount in controversy in excess of the minimum jurisdictional amount of $75,000, exclusive of costs and interest, in that the face amount of the policy at issue is $1,000,000.00.

7.     American General is informed and believes, and on that basis alleges, that Samuel M. Everett (deceased) applied for the subject life insurance policy by completing the life insurance application in Lemon Grove, California; that Samuel M. Everett completed the paramedical examination required for the application in Lemon Grove, California; that Samuel M. Everett executed Part B of the application in Lemon Grove, California; and that Samuel M. Everett was domiciled in Lemon Grove, California when the subject life insurance policy was delivered and issued.

8.     American General is informed and believes, and on that basis alleges, that venue is proper pursuant to 28 U.S.C. § 1391 (a) because the events giving rise to the claim occurred in this district.

\\\

\\\

---

2

**PLAINTIFF AMERFICAN GENERAL LIFE INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY RELIEF AND RESCISSION**

USDC SDCA Case #

301564.1

A-2

## GENERAL ALLEGATIONS

9.    On March 22, 2005, Samuel M. Everett applied in writing to American General for a life insurance policy and executed Part A of an application for life insurance seeking $1,000,000.00 in life insurance from American General.

10.    The Authorization and Signature section of Part A of the completed life insurance application (a copy which is attached hereto as Exhibit "A") reads, in part:

> I have read the above statements or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application (1) will consist of Part A, Part B, and if applicable, related forms; and (2) shall be the basis for any policy issued. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if (1) it is within the contestable period; and (2) such misrepresentation materially affects the acceptance of the risk. Except as may be provided in a Limited Temporary Life Insurance Agreement (LTLIA), I understand and agree that no insurance will be in effect under this application, or under any new policy issued by the Company, unless or until: the policy has been delivered and accepted; the full first modal premium for the issued policy has been paid; and there has been no change in the health of any proposed insured that would change the answers to any questions in the application.

11.    In completing Part A of the life insurance application, Samuel M. Everett knew and/or was informed that he was required to provide truthful, accurate, complete and honest answers to the questions set forth on the life insurance application.

12.    In completing the life insurance application to American General, Samuel M. Everett provided material information in response to questions set forth on the written life insurance application, including questions relating to income and felony history.

13.    American General is informed and believes and on that basis alleges that when Part A of the life insurance application was completed Samuel M. Everett answered "no" to question 10(F), which asks:

> Has the proposed insured ever been convicted of or pled guilty or no contest to a felony or does he or she have any charge pending against him or her? (if yes, list date, state and felony.).

---

3

**PLAINTIFF AMERFICAN GENERAL LIFE INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY RELIEF AND RESCISSION**

USDC SDCA Case #

301564.1

A-3

14.     American General is informed and believes and on that basis alleges that Samuel M. Everett represented his Personal Income as $60,000 and his Household Income as $100,000 on Part A of the life insurance application.

15.     Following receipt of Part A and Part B of the application, and completion of the paramedical exam, American General issued Policy Number YMA0086144 to Samuel M. Everett on May 5, 2005 with a face value $1,000,000.00 (hereinafter "the Policy") (a copy of which is attached as Exhibit "B").

16.     The annual premium for the Policy was $2,610.00.

17.     The Policy contained a two (2) year contestable period.

18.     The Policy was underwritten, approved and issued by American General based on the answers, statements and representations of Samuel M. Everett, which were made during the application process. American General relied on the answers, statements and representations of Samuel M. Everett set forth on the written life insurance application.

19.     American General is informed and believes, and on that basis alleges, that any material misrepresentation contained and relied upon by American General in Part A or Part B of the life insurance application may be used to reduce or deny a claim or void the policy if Samuel M. Everett knowingly provided false answers on the life insurance application.

20.     On March 11, 2006, Samuel M. Everett died of a gunshot wound to the head within the two (2) year contestable period for the Policy.

21.     On or about July 21, 2006, Defendant Niketta Everett submitted a claim for life insurance benefits under the Policy on account of the death of Samuel M. Everett.

22.     American General is informed and believes, and thereon alleges, that Part A of the application names Niketta L. Everett as the Primary Beneficiary and identifies her as Samuel M. Everett's spouse.

23.     American General conducted a contestable claim investigation after receiving Defendant Niketta Everett's claim.

4

**PLAINTIFF AMERFICAN GENERAL LIFE INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY RELIEF AND RESCISSION**

A-4

24.    American General's contestable claim investigation revealed that Samuel M. Everett, when completing the application for life insurance, failed to disclose substantive relevant and material information that would have changed American General's evaluation and underwriting of the Policy.

25.    As a result of the contestable claim investigation, American General discovered, for the first time, that Samuel M. Everett's record of arrests and prosecutions included felony convictions and/or guilty pleas.

26.    American General is informed and believes the answer of "no" to question 10(F) of Part A of the life insurance application was false and a knowing misrepresentation of Samuel M. Everett's criminal history of felony convictions and/or guilty pleas.

27.    Samuel M. Everett's convictions and/or guilty pleas for felonies are material to the issuance of the Policy and the risk of insurance borne by American General.

28.    As a result of the contestable claim investigation, American General discovered, for the first time that Samuel M. Everett's 2004 U.S. Federal Income Tax Return evidenced a significantly lower income than stated in the application for life insurance.

29.    American General is informed and believes that Samuel M. Everett's responses to the income questions as stated in Part A of the life insurance application were knowingly misrepresented and false.

30.    Samuel M. Everett's income was material to the issuance of the Policy and the risk of insurance borne by American General.

31.    American General is informed and believes, and on that basis alleges, that if American General had known the true nature of Samuel M. Everett's record of felony convictions and/or guilty pleas and his true income, American General would not have issued the Policy.

**PLAINTIFF AMERFICAN GENERAL LIFE INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY RELIEF AND RESCISSION**

USDC SDCA Case #

301564.1

A-5

32.   Samuel M. Everett's misrepresentations of income and felony convictions and/or guilty pleas are material misrepresentations and the bases for Samuel M. Everett's life insurance application to American General.

33.   American General is informed and believes, and thereon alleges, that based upon its contestable claim investigation, Samuel M. Everett failed to disclose and/or omitted material facts on the written life insurance application and otherwise intentionally or negligently failed to accurately, honestly and/or truthfully answer and disclose material information in response to the questions presented in the written life insurance application for the Policy.

34.   After completing the contestable claim investigation, American General wrote to Defendant Niketta Everett through her attorney on November 20, 2006, and informed her that there were material misrepresentations on the written application for the Policy and that American General was rescinding the Policy.

35.   American General returned all premiums paid for the Policy to Defendant Niketta Everett via check which has not been tendered or returned to American General.

### FIRST CLAIM FOR RELIEF
#### Declaratory Relief and Rescission

36.   American General re-alleges and incorporates by reference paragraphs 1 through 35 above as though fully set forth herein.

37.   American General alleges that the Policy death benefit, in the amount of $1,000,000, is not due and/or owing to Defendant Niketta Everett and that the Policy is subject to rescission.

38.   American General further alleges that the Policy is void *ab initio* based upon the material misrepresentations made in the written application for the Policy.

39.   American General has no adequate remedy at law, thereby American General requests that the Policy be declared null and void *ab initio*, and that the Policy be adjudicated rescinded.

**PLAINTIFF AMERFICAN GENERAL LIFE INSURANCE COMPANY'S
COMPLAINT FOR DECLARATORY RELIEF AND RESCISSION**
USDC SDCA Case #

301564.1

A-6

1    40.    On November 20, 2006, American General gave notice that it was rescinding the

2 Policy due to material misrepresentations of pertinent information on the application and that the

3 coverage was null and void from its inception date. Thereafter, American General returned the

4 paid premiums received in the amount of $2,391.51.

5    41.    There now exists an actual justiciable controversy among the parties with respect

6 to their rights and obligations under the Policy, specifically as follows:

7    (a)    Samuel M. Everett's answer of "no" to question 10(F) of Part A of the life

8    insurance application was false and a knowing misrepresentation of

9    Samuel M. Everett's felony record of convictions and/or guilty pleas;

10    (b)    Samuel M. Everett knowingly misrepresented responses to the income

11    questions as stated in Part A of the life insurance application and failed to

12    disclose his lack of income to justify and support his application for a

13    $1,000,000.00 life insurance policy;

14    (c)    Samuel M. Everett's felony convictions and/or felony guilty pleas were

15    material to the evaluation, underwriting and issuance of the Policy;

16    (d)    Samuel M. Everett's lack of income was material to the evaluation,

17    underwriting and issuance of the Policy;

18    (e)    Samuel M. Everett, knowingly submitted answers on Part A of the life

19    insurance application on March 22, 2005 which were false, misleading,

20    and/or fraudulent in an attempt to obtain life insurance for which he

21    would not qualify or otherwise been able to obtain;

22    (f)    Had American General known the true nature of Samuel M. Everett's

23    record of arrests and prosecutions including felony convictions and/or

24    guilty pleas, American General would not have insured Samuel M. Everett

25    or issued the Policy;

26

27                                    7
          **PLAINTIFF AMERFICAN GENERAL LIFE INSURANCE COMPANY'S**
28        **COMPLAINT FOR DECLARATORY RELIEF AND RESCISSION**

A-7

(g)     Had American General known of Samuel M. Everett's true income, at any time he applied for the life insurance policy, it would not have issued the Policy to him;

(h)     American General is informed and believes the Policy is void and American General rescinded the Policy based upon Samuel M. Everett's knowing misrepresentations, and omissions about his felony criminal history and income which were material to the underwriting, evaluation and issuance of the Policy;

(i)     After completing the contestable claim investigation, American General advised Defendant Niketta Everett through her attorney on November 20, 2006, that Samuel M. Everett made material misrepresentations on the written application for the Policy and that American General was rescinding the Policy;

(j)     American General returned a check for the amount of the premiums paid for the Policy to Defendant Niketta Everett;

(k)     Notwithstanding the notice of rescission on November 20, 2006, and the passing of six (6) months, Defendant Niketta Everett, through a new attorney, requested information from American General on May 25, 2007, and thereafter appears to again contend entitlement to the life insurance benefits under the Policy on account of the death of Samuel M. Everett;

(l)     American General believes and thereon alleges that Defendant Niketta Everett believes she is entitled to the life insurance policy benefits under the Policy on account of the death of Samuel M. Everett;

(m)     American General alleges that if it is determined at trial that material misrepresentations or omissions were made by Samuel M. Everett, then the Policy will be void *ab initio*;

**PLAINTIFF AMERFICAN GENERAL LIFE INSURANCE COMPANY'S
COMPLAINT FOR DECLARATORY RELIEF AND RESCISSION**
USDC SDCA Case #

301564.1

A-8

42.    For the aforementioned reasons, there exists now an actual and justiciable controversy among the parties. This Court is vested with the power to declare and adjudicate the rights and legal obligations of the parties to this action with reference to the issues raised by this Complaint.

43.    American General desires a judicial determination of the rights and obligations of each of the parties to this action under the Policy. A judicial determination is necessary and appropriate at this time in order that each of the parties may ascertain their respective rights and duties as to each other and may conduct themselves accordingly now and in the future.

## PRAYER

**WHEREFORE,** American General prays for judgment as follows:

(a)    That the Court enters an order that American General Policy Number YMA0086144 is null and void *ab initio;* and rescinded;

(b)    An order declaring and adjudging that Defendant Niketta Everett is not entitled to the death benefit under American General Policy Number YMA0086144, and that she only is entitled to a refund of the premiums paid for the Policy and nothing further;

(c)    That the Court enters an order restraining Defendant Niketta Everett from instituting or further prosecuting any other proceeding that affects the rights and obligations among the parties to this Complaint until further order of the Court;

(d)    For declaratory judgment by this Court decreeing the rights and obligations of the parties under the Policy in accordance with Plaintiff's contentions as set forth above;

(e)    An order awarding American General Life Insurance Company attorney fees and costs of suit incurred herein; and .

**PLAINTIFF AMERFICAN GENERAL LIFE INSURANCE COMPANY'S
COMPLAINT FOR DECLARATORY RELIEF AND RESCISSION**
USDC SDCA Case #

301564.1

A-9

1    (f)    For such other and further relief as this Court deems just and proper.

2

3    Dated:  April 23, 2008                    WILSON, ELSER, MOSKOWITZ,
                                               EDELMAN & DICKER LLP
4

5

6                              By: _Adrienne C R Publis___
                                   ADRIENNE C. PUBLICOVER
7                                  Attorneys for Plaintiff
                                   **AMERICAN GENERAL LIFE**
8                                  **INSURANCE COMPANY**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                              10
     **PLAINTIFF AMERFICAN GENERAL LIFE INSURANCE COMPANY'S**
28    **COMPLAINT FOR DECLARATORY RELIEF AND RESCISSION**
     USDC SDCA Case #

     301564.1

A-10

# Exhibit A

# AMERICAN GENERAL LIFE Insurance Company

2727-A Allen Parkway, Houston, Texas 77019 1-800-467-5433

American General Life Insurance Company, a stock company, will pay the benefits of this policy subject to its provisions. This page and the pages that follow are part of this policy.

Signed at Our Home Office at 2727-A Allen Parkway, Houston, Texas 77019.

*Elizabeth M. Tuck*
Secretary

*Matthew E. Winter*
President

## READ YOUR POLICY

This policy is a legal contract between the Owner and American General Life Insurance Company. Read Your policy carefully.

## RIGHT TO RETURN POLICY

The Owner may return this policy to Us at the above address or to the agent from whom it was purchased within 30 days after receipt. This policy will then be cancelled as of its date of issue and any premium paid will be refunded.

This is a term Endowment policy providing a death benefit prior to the Final Expiry Date as long as this policy is in force. The Cash Value is payable on the Initial Expiry Date, if the Insured is alive and this policy is in force. Life insurance coverage may be renewed annually following the Initial Expiry Date to the policy anniversary nearest the Insured's 95th birthday.

Renewable Level Benefit Term Endowment Policy
Insurance Payable In Event Of Death Prior to Final Expiry Date

Adjustable Premium
No Dividends

ROP 2002AG                    YMA0086144                    Page 1

A-12

## TABLE OF CONTENTS

| Page | Title of Provision |
|------|--------------------|
| 10 | Assignment |
| 8 | Basis Of Computation |
| 10 | Beneficiary |
| 8 | Cash Values |
| 10 | Change Of Owner Or Beneficiary |
| 10 | Claims Of Creditors |
| 10 | Contract |
| 8 | Conversion Option |
| 10 | Correspondence |
| 8 | Deferment |
| 6 & 7 | Definitions |
| 7 | Endowment |
| 8 | Grace Period |
| 7 | Incontestability |
| 10 | Misstatement Of Age Or Sex |
| 10 | Nonparticipating |
| 8 | Option On Premium Default |
| 10 | Owner |
| 7 | Payment Of Death Benefit Proceeds |
| 10 | Policy Settlement |
| 3 | Policy Specifications |
| 7 | Premium Payment |
| 1 | Read Your Policy |
| 7 | Reinstatement |
| 9 | Renewal Option |
| 9 | Right To Change Premium |
| 1 | Right To Return Policy |
| 3 | Schedule Of Benefits And Premiums |
| 7 | Suicide |
| 8 | Surrender Of Policy |
| 5 | Table Of Guaranteed Values |
| 4 | Table Of Premiums |
| 9 | Termination |

See Supplemental Benefit Pages For Riders, If Any.

A-13

## POLICY SPECIFICATIONS

| | | | |
|---|---|---|---|
| Insured | Samuel M Everett | Policy Number | YMA0096144 |
| Face Amount | $1,000,000 | Date of Issue | May 5, 2005 |
| Sex | MALE | Age at Issue | '31 |
| Underwriting Class | Standard Non-Tobacco | | |

## SCHEDULE OF BENEFITS AND PREMIUMS

| Benefits | Benefit Amounts | Annual Premium | Years Payable |
|---|---|---|---|
| Life Insurance | $1,000,000 | $2,610.00 | 30 Years* |

| | | |
|---|---|---|
| Total Initial Annual Premium | | $2,610.00 |

Annual renewal premiums are shown in the table of premiums on page 4. Premiums payable other than annually are equal to a percentage of the annual premium. These percentages are shown on page 4. Premiums for this policy are initially payable at Monthly intervals. The first Monthly premium is $0.00.

*This is the level term period. Premiums cannot be changed during this period. [On the thirtieth policy anniversary and any later policy anniversary We have a right to change current premiums.] See the Right To Change Premium provision.

**Endowment Date.** We will pay the Cash Value of this policy to the Owner on the Initial Expiry Date if the Insured is living on that date and this policy is in force.

**Expiry Dates.** The Initial Expiry Date is May 5, 2035. Subsequent expiry dates will occur at the end of each one year renewable term period. The Final Expiry Date is May 5, 2069.

[**Conversion Option.** This policy may be exchanged for a new policy as specified in the Conversion Option provision. This option is available until the thirtieth policy anniversary, provided the Insured is age 75 or less on the date of exchange.]



ROP 2002AG-8                          YMA0096144                          Page 3

A-14

TABLE OF PREMIUMS

| Policy Year | Current Annual Life Insurance Premium | Maximum Annual Life Insurance Premium | Policy Year | Current Annual Life Insurance Premium | Maximum Annual Life Insurance Premium |
|---|---|---|---|---|---|
| 1- 30 | $2,610.00 | $2,610.00 | 48 | $132,930.00 | $179,850.00 |
| 31 | $25,200.00 | $27,880.00 | 49 | $143,910.00 | $200,930.00 |
| 32 | $29,540.00 | $30,840.00 | 50 | $155,030.00 | $224,810.00 |
| 33 | $32,150.00 | $34,220.00 | 51 | $164,780.00 | $252,200.00 |
| 34 | $36,010.00 | $38,040.00 | 52 | $173,330.00 | $276,800.00 |
| 35 | $39,970.00 | $42,260.00 | 53 | $183,200.00 | $304,520.00 |
| 36 | $43,740.00 | $46,800.00 | 54 | $196,650.00 | $334,830.00 |
| 37 | $47,440.00 | $51,720.00 | 55 | $215,950.00 | $367,030.00 |
| 38 | $51,370.00 | $57,000.00 | 56 | $241,000.00 | $400,490.00 |
| 39 | $55,840.00 | $62,760.00 | 57 | $270,420.00 | $434,900.00 |
| 40 | $61,320.00 | $69,950.00 | 58 | $303,910.00 | $469,590.00 |
| 41 | $67,850.00 | $79,380.00 | 59 | $341,460.00 | $505,010.00 |
| 42 | $75,240.00 | $87,840.00 | 60 | $348,470.00 | $541,670.00 |
| 43 | $83,440.00 | $99,240.00 | 61 | $352,930.00 | $580,170.00 |
| 44 | $92,390.00 | $112,400.00 | 62 | $357,010.00 | $621,770.00 |
| 45 | $101,740.00 | $127,010.00 | 63 | $360,830.00 | $668,210.00 |
| 46 | $111,610.00 | $143,130.00 | 64 | $364,470.00 | $727,300.00 |
| 47 | $122,100.00 | $160,760.00 | | | |

The premiums shown above are annual life insurance premiums. Premiums payable other than annually are computed by multiplying the applicable annual premium by the premium percentages shown below.

| Premium Interval | Premium Percentage |
|---|---|
| Semi-annual | 50.00% |
| Quarterly | 25.00% |
| Monthly (Pre-authorized checking) | 8.33% |

ROP 2002AG-8                    YMA0086144                    Page 4

A-15

TABLE OF GUARANTEED VALUES

The values and periods shown are for the face amount of this policy, based on the age of the insured on the date of issue.

The Net Single Premiums Cash Values and Paid-Up Life Insurance amounts referred to in this policy are based on the Commissioners 1980 Standard Ordinary Mortality Table. The tables used are smoker or nonsmoker, age nearest birthday, in accordance with the Insured's Underwriting Class. The interest rate used to compute the guaranteed values is 5.75% per year. Deaths are assumed to occur at the end of the policy year of death.

| End of Policy Year | Cash Value | Paid-Up Life Insurance |
|---|---|---|
| 1 | $0.00 | $0.00 |
| 2 | $0.00 | $0.00 |
| 3 | $0.00 | $0.00 |
| 4 | $0.00 | $0.00 |
| 5 | $0.00 | $0.00 |
| 6 | $160.00 | $1,071.00 |
| 7 | $550.00 | $3,518.00 |
| 8 | $1,040.00 | $6,356.00 |
| 9 | $1,640.00 | $9,580.00 |
| 10 | $2,350.00 | $13,122.00 |
| 11 | $3,160.00 | $16,871.00 |
| 12 | $4,070.00 | $20,779.00 |
| 13 | $5,090.00 | $24,856.00 |
| 14 | $6,210.00 | $29,011.00 |
| 15 | $7,440.00 | $33,260.00 |
| 16 | $8,770.00 | $37,527.00 |
| 17 | $10,210.00 | $41,829.00 |
| 18 | $11,750.00 | $46,100.00 |
| 19 | $14,880.00 | $55,923.00 |
| 20 | $18,270.00 | $65,792.00 |
| 21 | $21,920.00 | $75,661.00 |
| 22 | $25,840.00 | $85,530.00 |
| 23 | $30,020.00 | $95,332.00 |
| 24 | $34,450.00 | $105,018.00 |
| 25 | $39,150.00 | $114,630.00 |
| 26 | $44,110.00 | $124,128.00 |
| 27 | $50,730.00 | $137,278.00 |
| 28 | $58,460.00 | $152,210.00 |
| 29 | $68,120.00 | $170,753.00 |
| 30 | $78,300.00 | $189,080.00 |
| 31 & LATER | 0 | 0 |

ROP 2002AG-8-05                    YMA0086144                    Page 5

A-16

## DEFINITIONS

**Company Reference.** "We", "Our", "Us", or "Company" means American General Life Insurance Company.

**"You", "Your."** The words "You" or "Your" mean the Owner of this policy.

**Home Office.** Our office at 2727-A Allen Parkway, Houston, Texas 77019; Mailing Address P.O. Box 1931, Houston, Texas 77251.

**Written, In Writing.** A Written request or notice in acceptable form and content, which is signed and dated, and received at Our Home Office.

**Underwriting Class.** The Underwriting Class of this policy is shown in the Policy Specifications as one of the following terms:

**Preferred Plus.** The term "Preferred Plus" means the annual premium is based on the Insured being an exceptional mortality risk and a non-user of tobacco.

**Preferred Non-Tobacco.** The term "Preferred Non-Tobacco" means the annual premium is based on the Insured being a significantly better than average mortality risk and a non-user of tobacco.

**Standard Plus.** The term "Standard Plus" means the annual premium is based on the Insured being a better than average mortality risk and a non-user of tobacco.

**Standard Non-Tobacco.** The term "Standard Non-Tobacco" means the annual premium is based on the Insured being an average mortality risk and a non-user of tobacco.

**Preferred Tobacco.** The term "Preferred Tobacco" means the annual premium is based on the Insured being a better than average mortality risk and a user of tobacco.

**Standard Tobacco.** The term "Standard Tobacco" means the annual premium is based on the Insured being an average mortality risk and a user of tobacco.

**Special Non-Tobacco.** The term "Special Non-Tobacco" means "Substandard" or "Rated". This means an extra premium is being charged due to the Insured's health, occupation or avocation and the Insured is a non-user of tobacco.

**Special Tobacco.** The term "Special Tobacco" means "Substandard" or "Rated". This means an extra premium is being charged due to the Insured's health, occupation or avocation and the Insured is a user of tobacco.

**Juvenile.** The term "Juvenile" means the Insured's age was 17 or less on the Date of Issue. Annual premiums shown in Juvenile policies for insurance ages 18 and above are premiums for tobacco users. (Premiums are not classified on the basis of the Insured being a user or non-user of tobacco at ages 0 through 17.)

**Rates on Policy Anniversary Nearest Insured's 18th Birthday (For Insured's age 17 or Less on Date of Issue).** If the Insured's age, nearest birthday, is 17 or less on the Date of Issue of this policy, Tobacco rates will be used starting on the policy anniversary nearest the Insured's 18th birthday, except as follows: Prior to the anniversary nearest the Insured's 18th birthday, a Written statement, signed by the Insured may be submitted to the Company requesting that Non-Tobacco rates be made effective. The statement must include the date the Insured last used tobacco, or state that the Insured has never used tobacco, whichever applies. If the request is approved, Non-Tobacco rates will be made effective on the policy anniversary nearest the Insured's 18th birthday. Otherwise, Tobacco rates will apply. We will send a notice to the Owner at least 30 days prior to the policy anniversary nearest the Insured's 18th birthday that an application for Non-Tobacco rates may be submitted.

ROP 2002AG                          YMA0086144                          Page 6

A-17

## DEFINITIONS (Continued)

**Age or attained age** means the Insured's age nearest birthday at the beginning of a policy year.

**Level Term Period** is the period of time during which premiums cannot change. The level term period is shown in the Policy Specifications.

**Policy months, policy years, and anniversaries.** The first policy year begins on the date of issue shown in the Policy Specifications. Subsequent policy months, years and anniversaries will be measured from that date.

## PAYMENT OF DEATH BENEFIT PROCEEDS

We will pay the face amount of this policy in a lump sum to the Insured's beneficiary if the Insured dies prior to the Final Expiry Date and while this policy is in force. Payment will be made after We receive due proof of the Insured's death. Due proof of the Insured's death will consist minimally of Our Company claim form completed by the beneficiary and a certified copy of the death certificate of the Insured. We will add to the face amount the part of any premium paid for the period beyond the policy month in which the Insured's death occurs.

If death occurs during the grace period of an unpaid premium, an amount equal to one month's premium will be deducted from the proceeds.

Interest as required by law will be added to the proceeds payable under this policy.

## ENDOWMENT

We will pay the Cash Value to the Owner on the Initial Expiry Date if the Insured is living and the policy is in force on that date.

## SUICIDE

In the event of the suicide of the Insured, while sane or insane, within two years from the date of issue, Our liability will be limited to the premiums paid.

## INCONTESTABILITY

Except for nonpayment of premiums, We will not contest this policy after it has been in force during the lifetime of the Insured for two years from the date of issue.

We will not contest a reinstatement after the reinstatement has been in force during the lifetime of the Insured for two years from the date of reinstatement. If We contest a reinstatement, We will contest only statements made in the reinstatement application.

## REINSTATEMENT

If this policy lapses, it may be reinstated within five years after the date of default. We will require the Insured to submit evidence of insurability that is satisfactory to Us.

Reinstatement will also be subject to (1) payment of the premium for the grace period with interest at the rate of 6% per year compounded annually plus the premium due for the current policy month, if this policy is reinstated after the level term period, or (2) payment of all overdue premiums with interest at the rate of 6% per year compounded annually, if this policy is reinstated before the end of the level term period.

## PREMIUM PAYMENT

The first premium is due on the date of issue and is payable at Our Home Office or to an authorized agent. Insurance will not take effect before this premium is paid. Later premiums are due and payable at the intervals and for the period shown on the Policy Specifications page, while the Insured is alive. Later premiums may be sent to Our Home Office or given to an authorized agent. A receipt signed by one of Our officers will be provided upon request. With Our consent, premiums may be paid at other intervals.

Any premium, after the first, not paid on or before its due date will be in default. Such due date will be the date of default.

A-18

## GRACE PERIOD

A 31 day grace period, without interest charge, is allowed for the payment of each premium due after the first. This policy will stay in force during this period. If the premium due is not paid before the end of the grace period, insurance will end and this policy will lapse unless kept in force under Option On Premium Default.

## CASH VALUE

The Cash Values for this policy are shown on page 5. These values are for the end of the policy year shown if premiums have been paid as required. The Cash Value at any time during a policy year depends on the amount of premium paid for that year and the time elapsed since the last policy anniversary.

## SURRENDER OF POLICY

The Owner may, by Written request, surrender this policy for its Cash Value. Surrender may occur at any time before the end of the level term period while the Insured is alive.

## DEFERMENT

We may defer payment of a policy surrender for the period permitted by law, up to six months. We will not defer a payment that is to be applied to pay premiums on policies in force with Us.

## OPTION ON PREMIUM DEFAULT

If this policy has a Cash Value it will stay in force from the due date of an unpaid premium as paid-up life insurance. The amount of paid-up life insurance will be such as the Cash Value on the date of default will buy when applied as a net single premium at the Insured's age on that date. In lieu of this benefit, if the Cash Value is less than $1,000, We reserve the right to pay the Cash Value to the Owner and terminate this policy.

While this policy is in force under this option, it may be surrendered for an amount equal to its Cash Value. The Cash Value within three months after the date of default will be the Cash Value on the date of default. The Cash Value after such three months will be the net single premium for the future insurance benefits. However, the Cash Value within 30 days after any anniversary date will not be less than the Cash Value on that anniversary.

Insurance kept in force under Option On Premium Default will exclude all riders except those with their own Option on Premium Default provision.

## BASIS OF COMPUTATION

The net single premiums and Cash Values referred to in this policy are based on the mortality tables and interest rates specified on page 5. A statement of the method of calculating Cash Values and Option On Premium Default has been filed with the insurance official of the state in which this policy is delivered. All values are equal to or greater than the values required by law in the state where this policy is delivered.

## CONVERSION OPTION

This option is available by Written request at any time during the period specified on the Policy Specifications page.

We will make a permanent individual life policy available for exchange. We, or one of Our affiliated companies, will issue the permanent individual policy. This policy may be exchanged for such policy on the Insured if no premium is in default and the Insured does not qualify for waiver of premium benefits under this policy. We will not require the Insured to submit evidence of insurability. The date of exchange will be the date requested by the Owner.

The new policy will be issued as of the date of exchange based on the Insured's age on that date and the premium rate then in use. We may offer a credit toward the first annual premium of the new policy. The face amount of the new policy may not exceed the face amount of this policy on the date of exchange. The Insured's Underwriting Class will be based on the Underwriting Class of this policy. The suicide and contestable periods of the new policy will be measured from the date of issue of this policy.

Any benefits or riders in force under this policy on the date of exchange and available for use with the new policy will be included in the new policy and will be subject to Our then current rules and rates. Any rider not in force under this policy may be included in the new policy only with Our consent.

ROP 2002AG                    YMA0086144                    Page 6

A-19

## TERMINATION

This policy will terminate on the earliest of:

1.    The death of the Insured;

2.    Surrender of this policy, if this policy has a net surrender value;

3.    The end of the grace period of an unpaid premium; or

4.    The Final Expiry Date.

## RIGHT TO CHANGE PREMIUM

We reserve the right to change the premium for this policy on the policy anniversary specified in the Policy Specifications and on any later policy anniversary, subject to the following terms:

1.    The premium will not exceed the applicable maximum premium shown on page 4.

2.    Any change in premium will apply to all Insureds with the same benefits and provisions who have the same date of issue, age at issue, sex and Underwriting Class. We will not change the premium because of a change in an Insured's health, occupation or avocation.

3.    Any change in premium will take effect only after 30 days' prior notice to the Owner of this policy.

4.    Any change in premium will be based on changes in Our expectations of future investment earnings, mortality, persistency, administrative and maintenance expenses, premium taxes, corporate income taxes or interest rates. We will not recoup prior losses, if any, nor distribute prior gains, by changing the premium.

5.    Any change in premium will be determined in accordance with procedures and standards on file with the Insurance Department.

This provision does not apply to any rider attached to this policy.

## RENEWAL OPTION

This policy may be renewed without evidence of insurability on each expiry date for an additional renewal term period. Renewal premiums are shown on page 4.

The first premium for a new term will be due at the end of the previous term. This policy will renew if this premium is paid within the grace period. Premiums for the new term will be due and payable at the intervals shown in the Policy Specifications.

No term period will extend beyond the Final Expiry Date shown in the Policy Specifications.

ROP 2002AG                                    YMA0086144                                    Page 9

A-20

**NONPARTICIPATING**

This policy does not pay dividends.

**OWNER**

The Owner is as shown in the application unless changed. The Owner has all rights under this policy while the Insured is alive. These rights are subject to the consent of any living irrevocable beneficiary.

**BENEFICIARY**

The beneficiary or beneficiaries are as shown in the application unless changed. If no beneficiary survives the Insured, the Owner or the estate of the Owner will be the beneficiary. However, if a trust is the Owner and no beneficiary survives the Insured, the estate of the Insured will be the beneficiary.

**CHANGE OF OWNER OR BENEFICIARY**

The Owner may change the beneficiary or ownership at any time during the lifetime of the Insured and while this policy is in force, unless the previous designation provides otherwise. To do so, send a Written request to Our Home Office. When We record the change, it will take effect as of the date the Owner signed the notice, subject to any payment We make or other action We take before recording.

**CORRESPONDENCE**

Any request, notice or proof shall be filed with Our Home Office.

**ASSIGNMENT**

No assignment of this policy will be binding on Us until filed with Us in Writing and recorded by Us. No assignment will affect any payment We made before We recorded the assignment. We will not be responsible for the validity of an assignment.

All rights of the Owner and any revocable beneficiary are subject to the rights of any assignee on record with Us.

**POLICY SETTLEMENT**

In any settlement We may require the return of this policy.

**THE CONTRACT**

The entire contract consists of this policy, any riders and endorsements, the attached copy of the original application and any amendments or supplemental applications.

All statements in an application are representations and not warranties. No statement may be used in defense of a claim under this policy unless it appears in an application or amendment that is attached to and made part of this policy.

This policy may not be changed, nor may any of Our rights or requirements be waived, except in Writing by one of Our authorized officers.

**MISSTATEMENT OF AGE OR SEX**

If the Insured's age or sex has been misstated, any death benefit payable by Us will be what the premiums paid would have bought at the Insured's correct age and sex.

**CLAIMS OF CREDITORS**

All payments under this policy are exempt from the claims of creditors to the extent permitted by law. Payments may not be assigned or withdrawn without Our consent before becoming payable.


A-21

## AMERICAN GENERAL LIFE INSURANCE COMPANY

### TERMINAL ILLNESS ACCELERATED BENEFIT RIDER

**NOTICE: Benefits advanced under this Rider may or may not be taxable. As with all tax matters, the Owner should consult a personal tax advisor to assess the impact of this benefit.**

This rider has been added to and made a part of the policy to which it is attached.

**Right to Examine Rider.** You may return this rider within 20 days after receipt if you are not satisfied with it for any reason. The rider may be returned to us or to the agent through whom the policy was purchased. Upon return of this rider within the 20 day period, it will be void from the beginning.

**Terminal Illness Benefit: Accelerated Payment of a Portion of the Base Policy Death Benefit.** This is an accelerated death benefit rider. This rider provides for acceleration of payment of a portion of the base policy death benefit proceeds upon receipt of satisfactory evidence that the Insured under the base policy is terminally ill with 12 months or less to live.

**Entitlement to an Accelerated Benefit Under This Rider.** The benefit under this rider is payable to the Owner of the policy if:

1. The amount payable is $2,500 or more;

2. The Owner elects to exercise the option while the policy and this rider are in force;

3. The Owner provides a written statement signed by a physician providing the following information:

   a. The diagnosis; and

   b. A statement that:

     (1) The medical condition of the Insured is expected to result in death; and

     (2) Because of the nature and severity of the medical condition, the Insured's life expectancy is not greater than 12 months;

4. The Owner provides consent of any irrevocable beneficiary or assignee that benefits may be paid to the Owner;

5. The Owner provides, if requested by us, a consent form from any of the following:

   a. A spouse;

   b. The Insured under this rider;

   c. Any beneficiary (other than as stated in paragraph 4); or

   d. Any other person if, in our discretion, such person's consent is needed to protect our interests;

6. Our right to a second opinion by a physician of our choice has been exercised or waived.

Payment of a benefit under this rider will be made only once at which time this rider will terminate. (For example, if after a benefit has been paid under this rider, the Insured recovers from a condition which was considered "terminal", and the Insured is again diagnosed as having a terminal illness, no additional benefit will be payable.)

**Limitations.** No benefit will be provided by this rider if terminal illness results from intentionally self-inflicted injuries.

This rider provides for the advance of a portion of the death benefit proceeds of the base policy. This is not meant to cause involuntarily access to proceeds ultimately payable to the beneficiary. Therefore, this benefit is not available:

1. If either the Owner or the Insured under this rider is required by law to use this benefit to meet the claims of creditors, whether in bankruptcy or otherwise; or

2. If either the Owner or the Insured under this rider is required by a government agency to use this benefit in order to apply for, obtain, or otherwise keep a government benefit or entitlement.

**Terminal Illness Accelerated Benefit Insured.** Only the Insured under the base policy is covered by this rider. No coverage is provided for the spouse, any children, or any other person covered by riders attached to the base policy.

**Terminal Illness Benefit Amount.** The Terminal Illness Benefit is a one time acceleration of up to 50% of the death benefit proceeds payable under the base policy, not to exceed $250,000.

The amount of coverage under this rider will change automatically with any change in the base policy benefit amount (subject to the $250,000 maximum). No accelerated benefit will be payable on the basis of any other rider attached to the policy.

A-22

**Deferred Premiums.** After payment of the Terminal Illness Benefit and if the insured is not eligible for Waiver of Premium (or Waiver of Monthly Deduction), we will defer premiums on the policy and any attached riders. The total of any premiums deferred and interest thereon will be assigned to us and deducted from the death benefit.

The amount of premium deferred on universal life policies containing a "Monthly Guarantee Premium" provision will be equal to the Guarantee Premium necessary to keep the policy in force to the next policy anniversary. The amount of premium deferred on universal life policies without a Monthly Guarantee Premium Provision will be equal to the sum of Monthly Deductions to the next policy anniversary. (See the policy provision entitled "How we calculate a Monthly Deduction.")

**Lien.** When an accelerated benefit is paid under this rider, a lien against future policy benefits will be established. The lien at the time the accelerated benefit is paid will be equal to the amount of such benefit; plus:

1. Any deferred premiums; and
2. Loan interest to the next policy anniversary, if due but unpaid (deferred loan interest); and
3. An administrative fee not to exceed $250; and
4. Interest to the next policy anniversary on the amount accelerated.

On ea  policy anniversary, any premiums, loan interest or interest on the lien that is due but unpaid  ill be added to the lien. The amount of the lie   nd any policy loan will be deducted from the Dea   Benefit prior to payment.

At any time the lien plus any policy loan equals or exceeds the death benefit that would be payable if there were no indebtedness, this policy will lapse. However, at least 31 days prior notice must be mailed by us to your last known address and to the assignee of record, if any.

**Interest.** After payment of the Terminal Illness Benefit, interest will accrue daily on paid out benefits and any deferred premiums at an annual effective interest rate. Interest on the lien will be payable in advance on each policy anniversary. The interest rate will be determined at the end of each calendar year. Such rate will be effective on the policy anniversary occurring in the following calendar year.

The maximum interest rate will not exceed the greater of:

1. The Moody's Corporate Bond Yield Average-Monthly Average Corporates (hereafter referred to as "Moody's Bond Yield Average") for the month of October preceding the calendar year for which the loan interest rate is determined; or

2. The interest rate used to calculate Cash Values under the policy during the period for which the interest rate is being determined, plus 1%.

If the Moody's Bond Yield Average is no longer published, the rate used in its place will be established by law or regulation of the insurance supervisory official of the jurisdiction in which the policy is delivered. Any change in the interest rate will be subject to the following:

1. No change in the interest rate will be made unless the difference in rates is 1/2% or more.

2. If the difference is 1/2% or more and the legal maximum interest rate is lower, we will lower the interest rate to be equal to or less than the legal maximum interest rate.

3. If the difference is 1/2% or more and the legal maximum interest rate is higher, we may increase the interest rate by at least 1/2% but not more than the legal maximum interest rate.

We will notify the Owner of the initial interest rate. If there is a benefit that has been paid on this policy, we will give the Owner advance notice of any increase in the interest rate.

**After the Terminal Illness Benefit is Paid: Effect on this Rider and the Base Policy.** After the Terminal Illness Benefit is paid, this rider will terminate. A lien will be established against future benefits payable under the base policy. There will be no reduction or lien against any term or accidental death benefit riders attached to the base policy. The cash surrender value available for withdrawal, surrender or loan will be only that amount in excess of the lien plus any policy loan plus any unpaid interest due. Once the lien has been established, it cannot be repaid except through policy surrender, maturity or as a death claim.

A-23

Payment of the Terminal Illness Benefit does not cause premiums or monthly deductions to be waived. Any waiver benefit will be considered only if a rider providing waiver benefits is attached to the policy and the Insured qualifies for waiver benefits on the basis of the provisions of such rider.

**Termination.** This rider will terminate on the earliest of the following dates:

1. On the date the base policy terminates for any reason;

2. On the date a benefit under this rider is paid;

3. Upon written request from the Owner that this rider be terminated.

**Physician.** Physician means an individual who is licensed to practice medicine and treat illness or injury in the state in which treatment is received and who is acting within the scope of that license. Physician does not include:

1. The Insured under this rider;

2. The Owner;

3. A person who lives with the Owner or the Insured under this rider;

4. A person who is a member of the immediate family of the Owner or the Insured under this rider.

**Immediate Family.** The term "Immediate Family" means a spouse, child, brother, sister, parent or grandparent of:

1. The Owner or the Insured under this rider; or

2. A spouse of the Owner or the Insured under this rider.

**Terminal Illness.** Terminal Illness is a non-correctable medical condition that:

1. With reasonable medical certainty, will result in the death of the Insured under this rider in 12 months or less from the date of a licensed physician's certification of such Insured's life expectancy; and

2. Was first diagnosed on or after the Effective Date of this Rider.

**Proof of Terminal Illness.** Before payment of an accelerated benefit, we will require you provide us with proof satisfactory to us that the Rider Insured's life expectancy is 12 months or less

from the date of application for the accelerated benefit. This proof will include the certification of a licensed physician. We reserve the right to obtain a second medical opinion at our expense, and to rely on such opinion if it differs.

**Reinstatement.** If the policy and this rider terminate at the same time, and the policy is reinstated, this rider will also be reinstated, subject to evidence of insurability satisfactory to the Company.

**Notice of Claim.** We must receive written notice of claim within 30 days after the date of diagnosis of the Terminal Illness or as soon as reasonably possible. The notice must be given to the Home Office. Notice should include the name of the Insured and the policy number.

**Time of Payment of Claims.** After we receive satisfactory written proof of terminal illness, and before the death of the Insured, we will pay the accelerated benefit then due.

**Payment of Claims.** The accelerated benefit will be paid to you. If the Insured dies before payment is made, this rider will terminate with no further value. We will pay the entire death benefit of the policy according to the beneficiary designation in effect at the time of payment.

**Legal Actions.** No legal action may be brought to recover on this rider within 60 days after written proof of terminal illness has been given.

**Policy Provisions Applicable.** This rider is subject to all the conditions and provisions of the policy, except as otherwise provided in this rider.

**Representations and Contestability.** All statements made in the application for this Rider by or on behalf of the Rider Insured will in the absence of fraud be deemed representations and not warranties. The validity of this Rider with respect to the Rider Insured will not be contestable after it has been in force for 2 years during the lifetime of the Rider Insured.

Any increase in coverage effective after the Rider Date of Issue or any reinstatement will not be contestable after such increase or reinstatement has been in force during the lifetime of the Rider Insured for 2 years from its effective date. A contest will be based only on the application for the increase or reinstatement.

91401-A                    Page 3 of 4

A-24

**Non-Participating.** No dividends are payable under this rider.

**Consideration.** The consideration for this rider is the application for the policy and this rider, and payment of sufficient premium to keep the base policy in force. There is no charge for this rider prior to the time application is made for acceleration of payment of a portion of base policy benefits due to terminal illness.

The effective date of this rider is the effective date of the policy unless a later date is shown on page 3 of the policy.

President

91401-A

Page 4 of 4

A-25

## AMERICAN GENERAL LIFE INSURANCE COMPANY

### ENDORSEMENT

This Endorsement has been added to and made a part of the Policy to which it is attached.

The following provision is hereby added to the policy.

**Surrender.** You may surrender your policy at any time. The surrender will be effective on the date we receive all of the necessary requirements, as follows:

1. A written request for surrender must be submitted, which includes:

   (a) The policy number;

   (b) The name of the Insured;

   (c) The signature of the Owner of the policy; and

   (d) The signature of any collateral assignee, irrevocable beneficiary, or other person having an interest in the policy through a legally binding document.

2. The policy must be returned, or, in lieu of the policy, a written statement indicating the policy has been lost or destroyed.

The necessary forms to surrender a policy will be furnished upon request. You may request such forms in writing, or you may call our Policyowners Service Department or your agent.

Upon receipt of the necessary requirements for surrender, we will pay to the Owner any surrender value or other moneys due as quickly as possible. Such payment will be made within 45 days from the date the surrender is effective, unless:

1. A later surrender date is requested by the Owner; or

2. The Company exercises its right, as stated in the policy, to delay payment of any values for a period not exceeding 6 months if such delay is necessary to assure the solvency of the Company.

The effective date of this Endorsement is the Date of Issue of the Policy.

*Matthew E. Winter*

President

L8853

A-26

Burton Gayzer
YMA0086144

**REDACTED**

**AIG**   **AMERICAN GENERAL**

**Amendment of Application**

**American General Life Insurance Company, Houston, TX**
Member of American International Group, Inc.
In this amendment, the "Company" refers to the insurance company whose name is shown above.
The insurance company shown above is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company is responsible for such obligations or payments.

**Proposed Insured**

| Proposed Insured | Samuel M Everett | | Date of birth | 1974 Social Security # |

The application to the company, dated_____ is amended as follows:

Issued with plan as ROP 2004 30 year

I agree that: (1) these changes shall be an amendment to and form a part of the original application and policy; and (2) such changes shall be binding on any person who shall have or claim any interest under such policy.

X Owner   *Samuel Everett*   Date *May 2, 2005*

Signed at (City, State)

X Witness   *Melvin Prett*   Date *05-02-2005*

X Proposed Insured   *Samuel Everett*   Date *05/02/05*
(if under age 15, signature of parent or guardian)

Show title of officer if signing for the business.

AG16 0047-46                              8443

361158

**REDACTED**

**AIG** **AMERICAN GENERAL**    |||||||||||||||| *361186*    **Term Insurance Application Part A**
California Version

☑ American General Life Insurance Company, Houston, TX    ☐ The United States Life Insurance Company in the City of New York, New York, NY
Member of American International Group, Inc.

The insurance company checked above is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company is responsible for such obligations or payments.

1. Proposed Insured   Name  SAMUEL M. EVERETT                     Social Security #
Sex ☑ M ☐ F   Birthplace (state, country)  PA              Date of Birth  ████████ ███████
Tobacco Use  Have you ever used any form of tobacco or nicotine products? ☐ yes ☑ no  If yes, date of last use _____
If yes, type and quantity of tobacco or nicotine products used _____
Driver's License No.  D9263482                 License State  CA
U.S. Citizen ☑ yes ☐ no  If no, Date of Entry _____   Type of Visa _____
Address  7940 BLOSSOM LN          City, State  LEMON GROVE, CA    ZIP  91945
Home Phone 691.302.0283   Work Phone  610.302.0283   E-mail Address  619-160-8026
Employer  EVER STRONG, INC.   Occupation  INVESTMENT OFFICER  Length of Employment  2 YRS
Duties  OWNER
Personal Income $  80,000   Household Income $  100,000   Net Worth $ _____

2. Owner  ☑ Proposed Insured  ☐ Trust  ☐ Someone other than Proposed Insured or Trust
A. Complete if other than the proposed insured is owner (If contingent owner is required, use Remarks section)
Name _____   Social Security or Tax ID # _____   Date of Birth _____
Address _____   City, State _____   ZIP _____
Home Phone ( ____ ) _____   Relationship to Proposed Insured _____
B. Complete if owner is a trust (If trustee is premium payor also complete section 7 part D.)
Exact Name of Trust _____   Trust Tax ID # _____
Current Trustee(s) _____   Date of Trust _____

3. Plan of Insurance   Product Name  ETC 2004 - 30   Amount Applied For $  1,000,000
Premium Class Quoted  1   $  266.13   Reason for Insurance  PROTECTION
Riders ☐ Waiver of Premium ☐ Child $ _____ (Complete Child Rider Attachment) ☐ No current children

4. Primary   Name  AURATA L. EVERETT   Relationship  SPOUSE   Share  100 %
Beneficiary   Name _____   Relationship _____   Share ____ %

5. Contingent   Name _____   Relationship _____   Share ____ %
Beneficiary   Name _____   Relationship _____   Share ____ %

6. Trust Information (If Beneficiary)  Exact Name of Trust _____
Trust Tax ID # _____   Current Trustee(s) _____   Date of Trust _____

7. Premium Payment  ☑ Modal $  266.13   ☐ Single $ _____
A. Frequency of modal premium  ☐ Annual  ☐ Semi-annual  ☐ Quarterly  ☑ Monthly (Bank Draft)
B. Method:  ☐ Direct Billing  ☐ Bank Draft (Complete Bank Draft Authorization)  ☐ List Bill: Number _____
☐ Other (Please explain) _____
C. Amount submitted with application $  0
D. Premium payer (Complete if other than owner)
Name _____   Social Security or Tax ID # _____   Home Phone ( ____ )
Address _____   City, State _____   ZIP _____

8. Health and Age Questions   (If the proposed insured answers yes to either question, temporary insurance is not available, the agreement will be void and any payment submitted will be refunded.)
A. Has the proposed insured ever had a heart attack, stroke, cancer, diabetes, or disorder of the immune system, or during the last two years been confined in a hospital or other health care facility or been advised to have any diagnostic tests or surgery not yet performed?
B. Is the proposed insured age 71 or above?

AGLC 101418-CA

A-28

9. **Other Life Insurance or Annuities**   *(Indicate life insurance policies or annuities in force or pending for the proposed insured.)*
☑ Check if none   Type: i-individual, b-business, g-group, p-pending life insurance or annuity

| Policy Number | Insurance Company | Type(s) (see above) | Year of Issue | Face Amount | Replacement* |
|---|---|---|---|---|---|
| | | | | | ☐ yes ☐ no |
| | | | | | ☐ yes ☐ no |

*Replacement means that the insurance being applied for may replace, change or use any monetary value of any existing or pending life insurance policy or annuity. If replacement may be involved, complete and submit replacement-related forms. Please note: certain states require completion of replacement related forms even when other life insurance or annuities are not being replaced by the policy being applied for.

10. **Background Information**

A. Does the proposed insured intend to travel or reside outside of the United States or Canada within the next two years?   ☐ yes ☑ no
   *(If yes, list country, date, length of stay and purpose.)*

B. In the past five years, has the proposed insured participated in, or does he or she intend to participate in: any flights as a trainee, pilot or crew member, scuba diving, skydiving or parachuting, ultralight aviation, auto racing, cave exploration, hang gliding, boat racing, mountaineering, extreme sports or other hazardous activities? *(If yes, circle the applicable activities and complete the Aviation and/or Avocation Questionnaire.)*   ☐ yes ☑ no

C. Has the proposed insured:
   1) During the past 90 days submitted an application for life insurance to any other company or begun the process of filling out an application? *(If yes, list company name, amount applied for, purpose of insurance and if application will be placed.)*   ☐ yes ☑ no

   2) Ever had a life or disability insurance application modified, rated, declined, postponed, withdrawn, cancelled or refused for renewal? *(If yes, list date and reason.)*

D. Has the proposed insured ever filed for bankruptcy?   ☐ yes ☑ no
   *(If yes, list chapter filed, date, reason and if discharged.)*

E. In the past five years, has the proposed insured been charged with or convicted of driving under the influence of alcohol or drugs or had any driving violations? _____   ☐ yes ☑ no
   *(If yes, list date, state, license no. and specific violation.)*

F. Has the proposed insured ever been convicted of or pled guilty or no contest to a felony or does he or she have any such charge pending against him or her? *(If yes, list date, state and felony.)*   ☐ yes ☑ no

**REMARKS**

11. **Details and Explanations** _____

_____

_____

_____

**Agent/Agency Information**

Does the proposed insured have any existing or pending annuity or life insurance contracts?   ☐ yes ☑ no

If yes, will the proposed insured replace, change, or use any monetary value of any existing or pending life insurance policy or annuity with any company in connection with the purchase of insurance?   ☐ yes ☐ no
*(If yes, please provide details in the Remarks section and attach all replacement-related forms. Certain states require completion of replacement-related forms even when life insurance or annuities are not being replaced by the policy being applied for.)*
I have ordered/obtained the following requirements:  ☐ APS  ☐ Blood Profile/Urinalysis  ☐ EKG  ☐ Inspection Report  ☐ MD Exam
☐ Oral Fluids *(as state permits)*  ☐ Paramedical Exam  ☐ Treadmill  ☐ Urinalysis Only  *(If requirements are scheduled, please provide name of examiner, clinic and date ordered.)*

| Agent(s) to Receive Commission | Agency Number | Agent Number | % of Commission |
|---|---|---|---|
| BURTON SNYDER | | 1H025 | |

I certify that the information supplied by the proposed insured/owner has been truthfully and accurately recorded on the Part A application.

BURTON SNYDER                           0769718
Writing Agent Name *(please print)*          State License #

X _____   X _____
Writing Agent Signature          Countersigned *(licensed resident agent if state required)*

Social Security or Tax ID #  FL US BANK      Phone # 800 522 5272      E-mail Address _____
Exam Date 3-18-05      Exam Time 9AM

A-29

Burton Gavzer

## AUTHORIZATION AND SIGNATURE

American General Life Insurance Company, Houston, TX

The United States Life Insurance Company in the City of New York, New York, NY

The above listed life insurance company as selected on page one of this application is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company is responsible for such obligations or payments. In this application, "Company" refers to the insurance company which was selected on page one.

### Authorization to Obtain and Disclose Information and Declaration

I give my consent to any of the entities listed below to give the Company, its legal representative, or American General Life Companies, an affiliated service company, all information they have pertaining to medical consultations, treatments, or surgeries; hospital confinements for physical and mental conditions; use of drugs or alcohol or any other information; for me or my minor children. Other information could include items such as: personal finances, habits, hazardous avocations, motor vehicle records from the Department of Motor Vehicles or court records, foreign travel, etc. The list of entities for which I give my consent to provide the information above is as follows: any physician or medical practitioner; any hospital, clinic or other health care facility; any insurance or reinsurance company; any consumer reporting agency or insurance support organization; my employer; or the Medical Information Bureau (MIB).

I understand the information obtained will be used by the Company to determine eligibility for insurance and eligibility for benefits under an existing policy. The Company may disclose any information gathered during its evaluation of my application to its reinsurers, the MIB, other persons or organizations performing business or legal services in connection with my application or claim, me, or any physician designated by me, or any person or entity required to receive such information by law or as I may further consent.

I, as well as any person authorized to act on my behalf, may, upon written request, obtain a copy of this consent from American General Life Companies. I understand that this consent may be revoked at any time by sending a written request to American General Life Companies, ATTN: Underwriting Department at P.O. Box 1931, Houston, TX 77251-1931.

This consent will be valid for 24 months from the date of this application. I agree that a copy of this consent will be as valid as the original. I authorize the Company to obtain an investigative consumer report on me. I understand that I may request to be interviewed for the report and receive, upon written request, a copy of such report. ☐ Check if you wish to be interviewed.

I have read the above statements or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and if applicable, related forms; and (2) shall be the basis for any policy issued. I understand that any misrepresentation made in this application and relied on by the insurer issuing the policy may be used to reduce or deny a claim or void the policy, if: (1) it is within its contestable period; and (2) such misrepresentation materially affects the acceptance of the risk. Except as may be stated in a Limited Temporary Life Insurance Agreement (LTLIA) for which all requirements are met, I understand and agree that no insurance will be in effect under this application, or any new policy issued by the insurer, unless or until: the policy has been delivered and accepted; the full first modal premium for the policy has been paid; and there has been no change in the health of the proposed insured that would change the answers to any questions in the application.

I understand and agree that no agent may: accept risks or pass upon insurability; make or modify contracts; or waive any of the insurers rights or requirements.

I have received a copy of the Notices to the Proposed Insured.

Limited Temporary Life Insurance Agreement– If eligible, I have received and accepted the LTLIA. This insurance is available only if: the full first modal premium is submitted with this application and "no" answers have been given by the proposed insured to the Health and Age questions in section B.

Under penalties of perjury, I certify (1) that the number shown on this application is my correct Social Security or Tax ID number; (2) that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code; and (3) that I am a U.S. person (including a U.S. resident alien). The Internal Revenue Service does not require my consent to any provision of this document other than the certifications required to avoid backup withholding. You must cross out item (2) if you are subject to backup withholding and cross out item (3) if you are not a U.S. person (including a U.S. resident alien).

Proposed Insured/Owner Signature(s)

Signed at (City & State) _Newport GROUP Ca_     On (Date) _3-22-05_

X _____     X _____
Primary Proposed Insured (if under age 15, signature of parent or guardian)     Owner (if other than proposed insured)

Samuel M Everett

AGLC 10234043     Page 3 of 8

A-30

**REDACTED**

 **AMERICAN GENERAL**

**Part B  Life Insurance Application**

☐ **American General Life Insurance Company, Houston, TX**
☐ **The United States Life Insurance Company in the City of New York, New York, NY**

*Members of American International Group, Inc.*
In this application, "Company" refers to the insurance company whose name is checked above.
The insurance company checked above is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company shown is responsible for such obligations or payments.

| Personal Information |
|---|

1. **Primary Proposed Insured**
   Name  *Samuel M. Everett*     Date of Birth  ___-74     Social Security #

2. **Other Proposed Insured**
   Name _____    Date of Birth _____    Social Security # _____

3. **Children (Provide name and date of birth for all children.)**
   _____
   _____

| Medical History |
|---|

4. **Physician Information**
   Name and address of each proposed insured's personal physician(s).  *(Write None if proposed insured(s) do not have one.)*
   Primary Proposed Insured  *None*
   Other Proposed Insured _____
   Child(ren) _____
   Name of insured, date, reason, findings and treatment at last visit _____
   _____
   _____
   _____
   _____

5. **Height and Weight**
   Primary Proposed Insured  *5 8* in. *335* lbs.   Other Proposed Insured ___ ft ___ in. ___ lbs.
   Child Name _____ ___ ft ___ in. ___ lbs.  If less than 1 yr. old, weight at birth ____
   Child Name _____ ___ ft ___ in. ___ lbs.  If less than 1 yr. old, weight at birth ____
   Child Name _____ ___ ft ___ in. ___ lbs.  If less than 1 yr. old, weight at birth ____
   Has any proposed insured had any weight change in excess of 10 lbs. in the past year?  ☐ Yes ☐ No  If yes, complete:
   Name  *Samuel Everett*     Loss ___ lbs.  Gain *10* lbs.  Reason _____

6. **Family History**

| | Age if Living | Age at Death | Heart Disease? | | Cancer History? | |
|---|---|---|---|---|---|---|
| **Primary Proposed Insured** | | | | | | |
| Father | *47* | ___ | ☑ No ☐ Yes, age of onset ___ | | ☑ No ☐ Yes, age of onset ___ Type ____ |
| Mother | *47* | ___ | ☑ No ☐ Yes, age of onset ___ | | ☑ No ☐ Yes, age of onset ___ Type ____ |
| **Other Proposed Insured** | | | | | | |
| Father | ___ | ___ | ☐ No ☐ Yes, age of onset ___ | | ☐ No ☐ Yes, age of onset ___ Type ____ |
| Mother | ___ | ___ | ☐ No ☐ Yes, age of onset ___ | | ☐ No ☐ Yes, age of onset ___ Type ____ |

AGLC 100560.2003                                                                 Page 1 of 4

A-31

**7: Personal Health History**

*Complete questions A through G for all proposed insureds who are applying. If you answer applies to any proposed insured, provide details, such as: proposed insured's name, date of first diagnosis, name and address of doctor, tests performed, test results, medication(s) or recommended treatment in the area provided.*

**A.** Has any proposed insured ever been diagnosed as having, been treated for, or consulted a licensed health care provider for:

 1) heart disease, heart attack, chest pain, irregular heartbeat, heart murmur, high cholesterol, high blood pressure or other disorder of the heart?

 2) a blood clot, aneurysm, stroke, or other disease, disorder or blockage of the arteries or veins?

 3) cancer, tumors, masses, cysts or other such abnormalities?

 4) diabetes, a disorder of the thyroid or other glands or a disorder of the immune system, blood or lymphatic system?

 5) colitis, hepatitis or a disorder of the esophagus, stomach, liver, pancreas, gall bladder or intestine?

 6) a disorder of the kidneys, bladder, prostate or reproductive organs or sugar or protein in the urine?

 7) asthma, bronchitis, emphysema, sleep apnea or other breathing or lung disorder?

 8) seizures, a disorder of the brain or spinal cord or other nervous system abnormality, including a mental or nervous disorder?

 9) arthritis, muscle disorders, connective tissue disease or other bone or joint disorders?

*(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
| | |
| | |
| | |
| | |
| | |

**B.** Is any proposed insured currently taking any medication, treatment or therapy or under medical observation?
*(If yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
| | |
| | |
| | |
| | |

**C.** Has any proposed insured in the past three years had but not sought treatment for:

 1) fainting spells, nervous disorder, headaches, convulsions or paralysis?

 2) any pain or discomfort in the chest or shortness of breath?

 3) disorders of the stomach, intestines or rectum, or blood in the urine?

*(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
| | |
| | |
| | |
| | |

A-32

**Personal Health History (cont.)**

*If yes answer applies to any proposed insured, provide details, such as: proposed insured's name, date of first diagnosis, name and address of doctor, tests performed, test results, medication(s) or recommended treatment in the area provided.*

**D. Has any proposed insured ever:**

1) sought or received advice, counseling or treatment by a medical professional for the use of alcohol or drugs, including prescription drugs?

2) used cocaine, marijuana, heroin, controlled substances or any other drug, except as legally prescribed by a physician?

*(If yes answered is D1 or D2, complete Drug/Alcohol Questionnaire.)*

**E. Has any proposed insured ever been diagnosed or treated by any member of the medical profession for AIDS Related Complex (ARC) or Acquired Immune Deficiency Syndrome (AIDS)?** *(If yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
| | |
| | |
| | |
| | |
| | |

**F. In the past 10 years, has any proposed insured:**

1) been hospitalized, consulted a health care provider or had any illness, injury or surgery?

2) had any laboratory tests, treatments or diagnostic procedures, including x-rays, scans or EKGs?

3) been advised to have any diagnostic test, hospitalization or treatment that was not completed?

4) received or claimed disability or hospital indemnity benefits or a pension for any injury, sickness, disability or impaired condition?

*(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
| | |
| | |
| | |
| | |

**G. Does any proposed insured have any symptoms or knowledge of any other condition that is not disclosed above?** *(If yes, explain.)* ☐ yes ☐ no

| Name of Proposed Insured | Details |
|---|---|
| | |
| | |
| | |
| | |
| | |

ADLC H0355-5005                                                      Page 3 of 4

A-33

| Statements and Signatures |
| --- |

**Statement by the Proposed Insured(s)**

I have read the above statements or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and if applicable, related forms; and (2) shall be the basis for any policy issued. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) it is within its contestable period; and (2) such misrepresentation materially affects the acceptance of the risk. Except as may be provided in a Limited Temporary Life Insurance Agreement (LTLIA), I understand and agree that no insurance will be in effect pursuant to this application, or under any new policy issued by the Company, unless or until the policy has been delivered and accepted, the full first modal premium for the issued policy has been paid; and there has been no change in the health of any proposed insured that would change the answers to any questions in the application.

I understand and agree that no agent is authorized to: accept risks or pass upon insurability; make or modify contracts; or waive any of the insurer's rights or requirements.

**Fraud**

Any person who, with intent to defraud or facilitate a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud.

**Proposed Insured(s) Signature(s)**

Signed at (city, state) _Lemon Grove  Ca_          On (date) _3.22.05_

X _Sam H__ H_                                    X _____
Primary Proposed Insured (if under age 15, signature of parent or guardian)    Other Proposed Insured (if under age 15, signature of parent or guardian)

**Signature(s) of Interviewer(s)**

To be signed by all interviewers, as applicable

I certify that the information supplied by the proposed insured(s) has been truthfully and accurately recorded on the Part B application.

_Burton Garzer_
Writing Agent Name (please print)                     Writing Agent #

X _____                        X _____
Writing Agent Signature                           Countersigned (Licensed resident agent if state required)

I certify that the information supplied by the proposed insured(s) has been truthfully and accurately recorded on the Part B application.

_____                          _____
Other Company Representative Name (please print)    Company

X _____
Other Company Representative Signature

**Paramedical Examiner/Medical Doctor Signature**

Agent should inform paramed or medical doctor of proper location to send form upon completion.

I certify that this exam was conducted the _22_ day of _March_ 20 _05_ at _1_ ☐ am ☑ pm

Examiner's Address _____         **Portamedic #475**
                                                   **4891 Pacific Highway Suite 103**
Examiner's Phone # ( ) _____             **San Diego, Ca. 92110**
                                                   **(619) 297-5642**
Examiner's Name _____            **Tax ID 221859359**

Examiner's Signature X _Maria Ilug RN_

Paramed: Use company stamp below.

AGLC 100567-2003                                                          Page 4 of 4

A-34

Renewable Level Benefit Term Endowment Policy                    Adjustable Premium
Insurance Payable In Event Of Death Prior to Final Expiry Date          No Dividends

A-35

# Exhibit B

A-36

**REDACTED**

## AMERICAN GENERAL

**AIG**

Term Insurance Application
Part A
California Version

☑ American General Life Insurance Company, Houston, TX
Members of American International Group, Inc.

☐ The United States Life Insurance Company in the City of New York, New York, NY

The insurance company checked above is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company is responsible for such obligations or payments.

1. Proposed Insured  Name **SAMUEL M. EVERETT**  Social Security # _____
Sex ☑ M ☐ F  Birthplace *(state, country)* **AH**  Date of Birth _____ marital ____
Tobacco Use  Have you ever used any form of tobacco or nicotine products? ☐ yes ☑ no  If yes, date of last use _____

If yes, type and quantity of tobacco or nicotine products used _____

Driver's License No. **D 9263 482**  License State **CA**

U.S. Citizen ☑ yes ☐ no  If no, Date of Entry _____  Type of Visa _____
Address **7940 BLOSSOM LN**  City, State **LEMON GROVE, CA**  ZIP **91945**
Home Phone **619-303-0283**  Work Phone **619-303-0283**  E-mail address **619-460-9836**
Employer **EVER STRONG INC**  Occupation **INVESTMENT MGR**  Length of Employment **1 YR**
Duties **OWNER**
Personal Income $ **80,000**  Household Income $ **100,000**  Net Worth $ _____

2. Owner  ☑ Proposed Insured  ☐ Trust  ☐ Someone other than Proposed Insured or Trust
A. Complete B other than the proposed insured is owner. *(If contingent owner is required, use Remarks section.)*
Name _____  Social Security or Tax ID # _____  Date of Birth _____
Address _____  City, State _____  ZIP _____
Home Phone ( ) _____  Relationship to Proposed Insured _____
B. Complete if owner is a trust *(If trustee is premium payor also complete section 7 part D.)*
Exact Name of Trust _____  Trust Tax ID # _____
Current Trustee(s) _____  Date of Trust _____

3. Plan of Insurance  Product Name **LTG 2004 - 30**  Amount Applied For $ **1,000,000**
Premium Class Quoted _____  **26113**  Reason for Insurance **PROTECTION**
Riders ☐ Waiver of Premium ☐ Child $ _____  (Complete Child Rider Attachment) ☐ No current children

4. Primary  Name **ALIKISHA L. EVERETT**  Relationship **SPOUSE**  Share **100** %
Beneficiary  Name _____  Relationship _____  Share _____ %

5. Contingent  Name _____  Relationship _____  Share _____ %
Beneficiary  Name _____  Relationship _____  Share _____ %

6. Trust Information *(if Beneficiary)*  Exact Name of Trust _____
Trust Tax ID # _____  Current Trustee(s) _____  Date of Trust _____

7. Premium Payment  ☑ Modal $ **26113**  ☐ Single $ _____
A. Frequency of modal premium:  ☐ Annual  ☐ Semi-annual  ☐ Quarterly  ☑ Monthly (Bank Draft)
B. Method:  ☐ Direct Billing  ☐ Bank Draft *(Complete Bank Draft Authorization.)*  ☐ List Bill; Number _____
☐ Other *(Please explain.)* _____
C. Amount submitted with application $ **-0-**
D. Premium payor *(Complete if other than owner)*
Name _____  Social Security or Tax ID # _____  Home Phone ( ) _____
Address _____  City, State _____  ZIP _____

8. Health and Age Questions  *(If the proposed insured answers yes to either question, temporary insurance is not available, the agreement will be void and any payment submitted will be refunded.)*
A. Has the proposed insured ever had a heart attack, stroke, cancer, diabetes, or disorder of the immune system, or during the last two years been confined in a hospital or other health care facility or been advised to have any diagnostic test or surgery not yet performed?
B. Is the proposed insured age 71 or above?

AGLC 100816-CA

A-37

9. **Other Insurance or Annuities** *(Indicate life insurance policies or annuities in force or pending for the proposed insured.)*
☐ Check if none    Type: i=individual, b=business, g=group, p=pending life insurance or annuity

| Policy Number | Insurance Company | Type(s) (see above) | Year of Issue | Face Amount | Replacement* |
|---|---|---|---|---|---|
| | | | | | ☐ yes ☐ no |
| | | | | | ☐ yes ☐ no |

*Replacement means that the insurance being applied for may replace, change or use any monetary value of any existing or pending life insurance policy or annuity. If replacement may be involved, complete and submit replacement-related forms. Please note: certain states require completion of replacement related forms even when other life insurance or annuities are not being replaced by the policy being applied for.

**10. Background Information**

A. Does the proposed insured intend to travel or reside outside of the United States or Canada within the next two years? ☐ yes ☒ no
   *(If yes, list country, date, length of stay and purpose.)* _____

B. In the past five years, has the proposed insured participated in or does he or she intend to participate in: any flights as a trainee, pilot or crew member; scuba diving; skydiving or parachuting; ultralight aviation; auto racing; cave exploration; hang gliding; boat racing; mountaineering; extreme sports or other hazardous activities? *(If yes, circle the applicable activities and complete the Aviation and/or Avocation Questionnaire.)*

C. Has the proposed insured:
   1) During the past 90 days submitted an application for life insurance to any other company or begun the process of filing out an application? *(If yes, list company name, amount applied for, purpose of insurance and if application will be placed.)* ☐ yes ☒ no

   2) Ever had a life or disability insurance application modified, rated, declined, postponed, withdrawn, canceled or refused for renewal? *(If yes, list date and reason.)* ☐ yes ☒ no

D. Has the proposed insured ever filed for bankruptcy? ☐ yes ☒ no
   *(If yes, list chapter filed, date, reason and if discharged.)* _____

E. In the past five years, has the proposed insured been charged with or convicted of driving under the influence of alcohol or drugs or had any driving violations? *(If yes, list date, state, license no. and specific violation.)* _____

F. Has the proposed insured ever been convicted of or pled guilty or no contest to a felony or does he or she have any such charge pending against him or her? *(If yes, list date, state and felony.)* ☐ yes ☒ no

**REMARKS**

**11. Details and Explanations** _____

_____

**Agent/Agency Information**
Does the proposed insured have any existing or pending annuity or life insurance contracts? ☐ yes ☒ no
If yes, will the proposed insured replace, change, or use any monetary value of any existing or pending life insurance
policy or annuity with any company in connection with the purchase of insurance? ☐ yes ☐ no
*(If yes, please provide details in the Remarks section and attach all replacement-related forms. Certain states require completion of replacement related forms even when life insurance or annuities are not being replaced by the policy being applied for.)*
I have ordered/obtained the following requirements: ☐ APS ☐ Blood Profile/Urinalysis ☐ EKG ☐ Inspection Report ☐ MD Exam
☐ Oral Fluids (as state permits) ☐ Paramedical Exam ☐ Treadmill ☐ Urinalysis Only *(If requirements are scheduled, please provide name of examiner, clinic and date ordered.)* _____

| Agent(s) to Receive Commission | Agency Number | Agent Number | % of Commission |
|---|---|---|---|
| BURTON GAYLER | | LN005 | |

I certify that the information supplied by the proposed insured/owner has been truthfully and accurately recorded on the Part A application.

Writing Agent Name (please print)    BURTON GAYLER    State License #    0D59700

Writing Agent Signature _____

Undersigned (licensed resident agent if state required) _____

Social Security or Tax ID # _____    Phone # 866 537-5378    E-mail Address _____

Fr U.S. BANK    Exam Date 3-18-05    Exam Time 9AM

A-38

Burton Gevzer

## AUTHORIZATION AND SIGNATURE

| American General Life Insurance Company, Houston, TX | The United States Life Insurance Company in the City of New York, New York, NY |
|---|---|

The above listed life insurance company as selected on page one of this application is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company is responsible for such obligations or payments. In this application, "Company" refers to the insurance company which was selected on page one.

### Authorization to Obtain and Disclose Information and Declaration

I give my consent to any of the entities listed below to give the Company, its legal representative, or American General Life Companies, an affiliated service company, all information they have pertaining to medical consultations, treatments, or surgeries; hospital confinements for physical and mental conditions; use of drugs or alcohol or any other information; for me or my minor children. Other information could include items such as: personal finances, habits, hazardous avocations, motor vehicle records from the Department of Motor Vehicles or court records, foreign travel, etc. The list of entities for which I give my consent to provide the information above is as follows: any physician or medical practitioner; any hospital, clinic or other health care facility; any insurance or reinsurance company; any consumer reporting agency or insurance support organization; my employer; or the Medical Information Bureau (MIB).

I understand the information obtained will be used by the Company to determine eligibility for insurance and eligibility for benefits under an existing policy. The Company may disclose any information gathered during its evaluation of my application or its reinsurers, the MIB, other persons or organizations performing business or legal services in connection with any application or claim, me, any physician designated by me, or any person or entity required to receive such information by law or as I may further consent.

I, as well as any person authorized to act on my behalf, may, upon written request, obtain a copy of this consent from American General Life Companies. I understand this consent may be revoked at any time by sending a written request to American General Life Companies, ATTN: Underwriting Department at P.O. Box 1931, Houston, TX 77251-1931.

This consent will be valid for 24 months from the date of this application. I agree that a copy of this consent will be as valid as the original. I authorize the Company to obtain an investigative consumer report on me. I understand that I may request to be interviewed for the report and receive, upon written request, a copy of such report.  ☐ Check if you wish to be interviewed.

I have read the above statements or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and if applicable, related forms; and (2) shall be the basis for any policy issued. I understand that any misrepresentation made in this application and relied on by the insurer issuing the policy may be used to reduce or deny a claim or void the policy, if: (1) it is within its contestable period; and (2) each misrepresentation materially affects the acceptance of the risk. Except as may be stated in a Limited Temporary Life Insurance Agreement (LTLIA) for which all requirements are met, I understand and agree that no insurance will be in effect under this application, or any new policy issued by the insurer, unless or until: the policy has been delivered and accepted; the full first modal premium for the policy has been paid; and there has been no change in the health of the proposed insured that would change the answers to any questions in the application.

I understand and agree that no agent may: accept risks or pass upon insurability; make or modify contracts; or waive any of the insurers' rights or requirements.

I have received a copy of the Notices to the Proposed Insured.

Limited Temporary Life Insurance Agreement— If eligible, I have received and accepted the LTLIA. This insurance is available only if; the first first modal premium is submitted with this application and "no" answers have been given by the proposed insured to the Health and Age questions in section B.

Under penalties of perjury, I certify: (1) that the number shown on this application is my correct Social Security or Tax ID number; (2) that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code; and (3) that I am a U.S. person (including a U.S. resident alien). The Internal Revenue Service does not require my consent to any provision of this document other than the certifications required to avoid backup withholding. You must cross out item (2) if you are subject to backup withholding and cross out item (3) if you are not a U.S. person (including a U.S. resident alien).

Proposed Insured/Owner Signature(s)

Signed at (City, State)  _HERON GROUP CA_    On (Date)  _3-22-05_

X _[signature]_                              X

Primary Proposed Insured (if under age 15, signature of parent or guardian)    Owner (if other than proposed insured)

Samuel M Everett

AGLC 10234-CS                                                                        Page 3 of 6

REDACTED

# AIG AMERICAN GENERAL

**Part B Life Insurance Application**

☐ American General Life Insurance Company, Houston, TX
☐ The United States Life Insurance Company in the City of New York, New York, NY

Members of American International Group, Inc.

In this application, "Company" refers to the insurance company whose name is checked above.

The insurance company checked above is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company shown is responsible for such obligations or payments.

| Personal Information |
|---|

**1. Primary Proposed Insured**
Name _Samuel M. Everett_   Date of Birth ▓▓-74   Social Security #

**2. Other Proposed Insured**
Name _____   Date of Birth _____   Social Security # _____

**3. Children** *(Provide name and date of birth for all children.)*

| Medical History |
|---|

**4. Physician Information**
Name and address of each proposed insured's personal physician(s). *(Write None if proposed insured(s) do not have one.)*
Primary Proposed Insured _None_
Other Proposed Insured _____
Child(ren) _____
Name of insured, date, reason, findings and treatment at last visit _____

**5. Height and Weight**
Primary Proposed Insured _5_ft._8_in._335_lbs.   Other Proposed Insured ____ft.____in.____lbs.
Child Name _____ ____ft.____in.____lbs.   If less than 1 yr. old, weight at birth _____
Child Name _____ ____ft.____in.____lbs.   If less than 1 yr. old, weight at birth _____
Child Name _____ ____ft.____in.____lbs.   If less than 1 yr. old, weight at birth _____
Has any proposed insured had any weight change in excess of 10 lbs. in the past year? ☑ yes ☐ no  If yes, complete:
Name _Samuel Everett_   Loss____lbs.  Gain_10_lbs.  Reason _?_

**6. Family History**

| | Age if Living | Age at Death | Heart Disease? | Cancer History? |
|---|---|---|---|---|
| **Primary Proposed Insured** | | | | |
| Father | 47 | | ☑ No ☐ Yes, age of onset ___ | ☑ No ☐ Yes, age of onset ___ Type _____ |
| Mother | 47 | | ☑ No ☐ Yes, age of onset ___ | ☑ No ☐ Yes, age of onset ___ Type _____ |
| **Other Proposed Insured** | | | | |
| Father | ___ | ___ | ☐ No ☐ Yes, age of onset ___ | ☐ No ☐ Yes, age of onset ___ Type _____ |
| Mother | ___ | ___ | ☐ No ☐ Yes, age of onset ___ | ☐ No ☐ Yes, age of onset ___ Type _____ |

AGLC 100956-2003

Page 1 of 4

A-40

**7: Personal Health History**

*Complete questions A through G for all proposed insureds who are applying. If yes answer applies to any proposed insured, provide details, such as: proposed insured's name, date of first diagnosis, name and address of doctor, tests performed, test results, medication(s) or recommended treatment in the area provided.*

A. Has any proposed insured ever been diagnosed as having, been treated for, or consulted a licensed health care provider for:

1) heart disease, heart attack, chest pain, irregular heartbeat, heart murmur, high cholesterol, high blood pressure or other disorder of the heart?

2) a blood clot, aneurysm, stroke, or other disease, disorder or blockage of the arteries or veins?

3) cancer, tumors, masses, cysts or other such abnormalities?

4) diabetes, a disorder of the thyroid or other glands or a disorder of the immune system, blood or lymphatic system?

5) colitis, hepatitis or a disorder of the esophagus, stomach, liver, pancreas, gall bladder or intestine?

6) a disorder of the kidneys, bladder, prostate or reproductive organs or sugar or protein in the urine?

7) asthma, bronchitis, emphysema, sleep apnea or other breathing or lung disorder?

8) seizures, a disorder of the brain or spinal cord or other nervous system abnormality, including a mental or nervous disorder?

9) arthritis, muscle disorders, connective tissue disease or other bone or joint disorders?

*(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
| | |
| | |
| | |
| | |
| | |

B. Is any proposed insured currently taking any medication, treatment or therapy or under medical observation? *(If yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
| | |
| | |
| | |
| | |

C. Has any proposed insured in the past three years had but not sought treatment for:

1) fainting spells, nervous disorder, headaches, convulsions or paralysis?

2) any pain or discomfort in the chest or shortness of breath?

3) disorders of the stomach, intestines or rectum, or blood in the urine?

*(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
| | |
| | |
| | |
| | |

**Personal Health History (cont.)**

*If you answer applies to any proposed insured, provide details, such as: proposed insured's name, date of first diagnosis, name and address of doctor, tests performed, test results, medication(s) or recommended treatment in the area provided.*

**D. Has any proposed insured ever:**

1) sought or received advice, counseling or treatment by a medical professional for the use of alcohol or drugs, including prescription drugs?

2) used cocaine, marijuana, heroin, controlled substances or any other drug, except as legally prescribed by a physician?

*(If yes answered to D1 or D2, complete Drug/Alcohol Questionnaire.)*

**E. Has any proposed insured ever been diagnosed or treated by any member of the medical profession for AIDS Related Complex (ARC) or Acquired Immune Deficiency Syndrome (AIDS)? (If yes, explain.)**

| Name of Proposed Insured | Details |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

**F. In the past 10 years, has any proposed insured:**

1) been hospitalized, consulted a health care provider or had any illness, injury or surgery?

2) had any laboratory tests, treatments or diagnostic procedures, including x-rays, scans or EKGs?

3) been advised to have any diagnostic test, hospitalization or treatment that was not completed?

4) received or claimed disability or hospital indemnity benefits or a pension for any injury, sickness, disability or impaired condition?

*(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

**G. Does any proposed insured have any symptoms or knowledge of any other condition that is not disclosed above? (If yes, explain.)**   ☐ yes ☐ no

| Name of Proposed Insured | Details |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

AGLC 100686-2003

Page 3 of 4

A-42

| Statements and Signatures |
| --- |

**Statement by the Proposed Insured(s)**

I have read the above statements or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and if applicable, related forms; and (2) shall be the basis for any policy issued. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) it is within its contestable period; and (2) such misrepresentation materially affects the acceptance of the risk. Except as may be provided in a Limited Temporary Life Insurance Agreement (LTLIA), I understand and agree that no insurance will be in effect pursuant to this application, or under any new policy issued by the Company, unless or until: the policy has been delivered and accepted; the full first modal premium for the issued policy has been paid; and there has been no change in the health of any proposed insured that would change the answers to any questions in the application.

I understand and agree that no agent is authorized to: accept risks or pass upon insurability; make or modify contracts; or waive any of the insurer's rights or requirements.

**Fraud**

Any person who, with intent to defraud or facilitate a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud.

**Proposed Insured(s) Signature(s)**

Signed at (city, state)  _Lemon Grove Ca_   On (date)  _3-22-05_

X _[signature]_  _____   X _____
Primary Proposed Insured (if under age 15, signature of parent or guardian)   Other Proposed Insured (if under age 15, signature of parent or guardian)

**Signature(s) of Interviewer(s)**
To be signed by all interviewers, as applicable

I certify that the information supplied by the proposed insured(s) has been truthfully and accurately recorded on the Part B application.

_Burton Garver_
Writing Agent Name (please print)   Writing Agent #

X _____   X _____
Writing Agent Signature   Countersigned (Licensed resident agent if state required)

I certify that the information supplied by the proposed insured(s) has been truthfully and accurately recorded on the Part B application.

_____   _____
Other Company Representative Name (please print)   Company

X _____
Other Company Representative Signature

**Paramedical Examiner/Medical Doctor Signature**
Agent should inform paramed or medical doctor of proper location to send form upon completion.

I certify that this exam was conducted the _22_ day of _March_ 20_05_, at ____ □ am □ pm

Examiner's Address  _____   **Portamedic #475**
                                                 **4891 Pacific Highway Suite 103**
Examiner's Phone # (   )  _____        **San Diego, Ca 92110**
                                                 **(619) 297-5642**
Examiner's Name  _____        **Tax ID 221659359**

Examiner's Signature  X _[signature]_

Paramed: Use company stamp below.

AGLC 100504-2003                                                    Page 4 of 4

A-43

04/23/2008

# Cash Register - Daily Receipts Report

Page: 5

| Name | Date Recvd | Receipt Nbr | Code | Pymt. | Check Number | Amount | Case Nbr | Reason for VOID | Intake Clerk | From |
|------|-----------|-------------|------|-------|--------------|--------|----------|-----------------|--------------|------|
| 08/0740 | 04/23/08 | 00150128 | D1 | 1 CK | BC68342 | 60.00 | | | MB | AMERIGAN GENERAL LIFE INSURANC |
| 08/0740 | 04/23/08 | 00150128 | D2 | 1 CK | BC68342 | 100.00 | | | MB | AMERIGAN GENERAL LIFE INSURANC |
| 08/0740 | 04/23/08 | 00150128 | I1 | 1 CK | BC68342 | 190.00 | | | MB | AMERIGAN GENERAL LIFE INSURANC |
| | | | | | Total For Receipt | 350.00 | | | | |

A-44

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I. (a) PLAINTIFFS**
AMERICAN GENERAL LIFE INSURANCE COMPANY

**DEFENDANTS**
NIKETTA EVERETT and DOES 1-10,

FILED

'08 CV 740    WU JMA

08 APR 23 PM 4: 22

DEPUTY

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Texas
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Pennsylvania
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Adrienne C. Publicover (SBN 161432)
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
525 Market Street, 17th Floor
San Francisco, CA  94105
Tel: (415) 433-0990 / Fax: (415) 434-1370

ATTORNEYS (IF KNOWN)

ORIGINAL    FAXED

**II. BASIS OF JURISDICTION** (PLACE AN 'X' IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
28 U.S.C. Section 1332, 28 U.S.C. Sections 2201, et seq.

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| | PERSONAL INJURY | PERSONAL INJURY | | | |
| ☒ 110 Insurance | ☐ 310 Airplane | ☐ 362 Personal Injury - Medical Malpractice | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 315 Airplane Product Liability | | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | Property 21 USC 881 | PROPERTY RIGHTS | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | SOCIAL SECURITY | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | LABOR | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | HABEAS CORPUS: | | FEDERAL TAX SUITS | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Conditions | | | |

**VI. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removal from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 0.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE _____ Docket Number _____

DATE
April 23, 2008

SIGNATURE OF ATTORNEY OF RECORD
Adrienne C. Publicover, Esq.

::ODMA\PCDOCS\WORDPERFECT\228161\1 January 24, 2000 (3:10pm)

A-45

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.    (a) Plaintiffs - Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.    Jurisdiction. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.    Residence (citizenship) of Principal Parties. This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.    Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause.

V.    Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

VI.    Origin. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2)    Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate's decision.

VII.    Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.    Related Cases. This section of the JS-44 is used to reference relating pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

Date and Attorney Signature. Date and sign the civil cover sheet.

(rev. 07/89)

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

A-46

**Li, Nancy**

| | |
|---|---|
| **From:** | efile_information@casd.uscourts.gov |
| **Sent:** | Thursday, April 24, 2008 9:29 AM |
| **To:** | casd.uscourts.gov@casd.uscourts.gov |
| **Subject:** | Activity in Case 3:08-cv-00740-W-JMA American General Life Insurance Company v. Everett et al Complaint |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

**U.S. District Court**

**Southern District of California**

**Notice of Electronic Filing**

The following transaction was entered on 4/24/2008 at 9:29 AM PDT and filed on 4/23/2008
**Case Name:** American General Life Insurance Company v. Everett et al
**Case Number:** 3:08-cv-740
**Filer:** American General Life Insurance Company
**Document Number:** 1

**Docket Text:**
**COMPLAINT against Defendants Niketta Everett, and DOES 1-10 ( Filing fee $ 350 receipt number 150128.), filed by American General Life Insurance Company.(jjh)**

**3:08-cv-740 Notice has been electronically mailed to:**

Adrienne C Publicover adrienne.publicover@wilsonelser.com, nancy.li@wilsonelser.com

**3:08-cv-740 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1106146653 [Date=4/24/2008] [FileNumber=2556921-0
] [7aad28a946c4435f563164f3a92f4c0d6f8d4f88e61598a30048bde1a9906f4d7f2
de160feb6ee1b50c57e9843d5cfe2aa6951718682d9e1d6b6426676091bd6]]

4/24/2008

A-47

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "B"**

*pleadings*

**JS 44** (Rev. 11/04)

**CIVIL COVER SHEET**

**APPENDIX H**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Niketa Everett, individually and as Beneficiary of Samuel M. Everett, deceased

**(b)** County of Residence of First Listed Plaintiff    Philadelphia
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Bruce L. Neff, Esquire  (215) 564-3331
Two Penn Center, Ste. 530
Philadelphia, PA  19102

**DEFENDANTS**  American General Life Insurance Company and U.S.Bancorp Insurance Services, LLC

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | cn | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | | |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | | |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | | |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | | |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | | |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | | |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | | |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5

**VI. CAUSE OF ACTION**  Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1332
Brief description of cause:

**VII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $

**VIII. RELATED CASE(S) IF ANY**  (See instructions):  JUDGE                   (Sout

DATE  5/23/08                     SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT        APPLYING IFP        JUI

---

Fri May 23 14:51:36 2008

UNITED STATES DISTRICT COURT

PHILADELPHIA  , PA

Receipt No.  400 948572
Cashier    stevet

Check Number: 36577

DO Code    Div No
4666       1

| Sub Acct Type | Tender | Amount |
|---|---|---|
| 1:510000 N | 2 | 190.00 |
| 2:086400 N | 2 | 100.00 |
| 3:086900 N | 2 | 60.00 |

Total Amount      $  350.00

NEFF

08-CV-2426

cn

B-1

APPENDIX I

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Niketa Everett, Individually and
as Beneficiary of Samuel M. Everett,
deceased

:                    CIVIL ACTION
:
v.                  :
:
American General Life Ins. Co.    :
and U.S. Bancorp Ins. Services,LLC

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.            ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits                    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                            ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                              (x )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    ( )

| | | |
|---|---|---|
| 5/33/08 | Attorney-at-law | Bruce L. Neff, Esquire |
| **Date** | | **Attorney for** Plaintiff |
| 215-564-3331 | 215-564-6952 | bneff@neffandassociates.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

B-2

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NIKETA EVERETT, Individually and as | : | |
| Beneficiary of Samuel M. Everett, deceased | : | |
| 4238 Richmond Street | : | CIVIL ACTION |
| Philadelphia, Pa   19137 | : | |
| | : | |
| vs. | : | |
| | : | TRIAL BY JURY DEMAND |
| AMERICAN GENERAL LIFE | : | |
| INSURANCE COMPANY | : | |
| 2727-A Allen Parkway | : | |
| Houston, TX   77019 | : | |
| and | : | |
| U.S. BANCORP INSURANCE | : | No.:   *08cv2426* |
| SERVICES, LLC | : | |
| 809 S. 60th Street, Suite 205 | : | |
| West Allis, WI   53214 | : | |

## COMPLAINT

Plaintiff, Niketa Everett, individually and as beneficiary on the policy of life insurance issued by Defendants, by and through her attorneys, Neff and Associates, by way of Civil Action Complaint, avers as follow:

## PARTIES

1.  Plaintiff, Niketa Everett, is an adult individual and citizen of the Commonwealth of Pennsylvania, currently residing at 4238 Richmond Street, Philadelphia, PA,  19137.

2.  Defendant, American General Life Insurance Company (hereinafter "American General"), is a corporation organized under the laws of the State of Texas with its principal place of business in Houston, TX.

MAY 2 3 2008

B-3

3.  Defendant, U.S. Bancorp Insurance Services LLC (hereinafter "U.S. Bancorp"), is a limited liability corporation organized under the laws of the State of Wisconsin with its principal place of business in West Allis, WI.

4.  This matter arises from Plaintiff's claim for proceeds of an insurance policy issued by Defendants on the life of her husband Samuel Everett in face amount of One Million ($1,000,000.00) Dollars.

## STATEMENT OF JURISDICTION

5.  This Court has subject matter jurisdiction pursuant to 28 U.S.C.§1332.

6.  The citizenship of all parties is diverse.

7.  The amount in controversy is in excess of $75,000.00, inclusive of costs and interest.

8.  At all material times both Plaintiff and Plaintiff's decedent were citizens of the Commonwealth of Pennsylvania.

9.  At all material times, Defendants have been licensed and authorized to engage in business in the Commonwealth of Pennsylvania.

10.  At all material times, Defendants have engaged in continuous and substantial business in the Commonwealth of Pennsylvania including but not limited to business in Philadelphia County.

## STATEMENT OF FACTS

11.  In 2004 Plaintiff and Plaintiff's decedent were residing in California.

12.  In or around February 2005, both Plaintiff and Plaintiff's decedent received an unsolicited offer from U.S. Bancorp for the sale of life insurance coverage.

13.  Plaintiff and Plaintiff's decedent responded to the aforementioned solicitation resulting in a phone interview.

B-4

14. Both Plaintiff and Plaintiff's decedent were then interviewed by Defendants' agent Burton Gavzer.

15. Plaintiff believes and therefore avers that Defendants' agent Gavzer filled out Part A of the term insurance application at issue herein at some point following the aforementioned phone interview. See Application attached hereto as Exhibit "A".

16. At no time did Plaintiff's decedent fill out Part A of the term insurance application at issue herein.

17. On or about March 1, 2005, Plaintiff's decedent received correspondence thanking him for choosing the Term Life Insurance offered by U.S. Bancorp and informing that the coverage would be "underwritten" by American General. See Exhibit "B" attached hereto.

18. The March 2005 correspondence informed Plaintiff's decedent that a medical examination would be scheduled.

19. On March 22, 2005, Plaintiff's decedent underwent a medical examination by an agent and/or employee of Defendants, American General and/or U.S. Bancorp (hereinafter referred to as the medical examiner).

20. The medical examiner conducted the exam and completed Part B of the life insurance application based on history provided by Plaintiff's decedent.

21. The medical examiner also presented Plaintiff's decedent with the Application, Part A, previously completed by Burton Gavzer. This was the first time Plaintiff's decedent had seen the Application.

22. Question 10, Part A of the Application was answered by Gavzer without requesting this information from Plaintiff's decedent during the initial phone interview.

B-5

23. On March 22, 2005, Plaintiff's decedent informed the medical examiner that the answer to Question 10. F. was incorrect.

24. Plaintiff's decedent informed the medical examiner that he had a criminal record that was not documented in the answer to Question 10.F.

25. The medical examiner's agent informed Plaintiff's decedent that he did not have to report the conviction and/or guilty plea at issue because it had occurred a sufficient period of time prior to Application.

26. Plaintiff's reliance on the representation of the medical examiner was justified and reasonable under the circumstances.

27. The medical examiner's representation was made with the intent that Plaintiff's decedent rely thereon by executing the Application as presented.

28. In reliance on the statements of the medical examiner, Plaintiff's decedent executed Page 4 of the Application.

29. Defendants utilized the medical examiner to review the policy with Plaintiff's decedent including Part A, Paragraph 10.

30. The medical examiner acted within the actual or apparent authority granted by Defendants at all times.

31. Among other things, Plaintiff's decedent informed Defendant's medical examiner that he was hospitalized in four (4) days during 1998 for treatment of gunshot wounds to his low back.

32. Plaintiff's decedent also completed an Authorization for disclosure of medical information and separate Authorization for disclosure of information pertaining to other information including personal finances, habits, hazardous avocations, records from the Department of Motor Vehicles and court records.

B-6

33. Plaintiff's decedent was informed by letter dated April 15, 2004 that the policy was approved but because of Plaintiff's "build", it was approved at standard non-tobacco rates. See copy of the April 15, 2005 letter from Defendant's Midwest Operations Center to Plaintiff's decedent, attached hereto as Exhibit "C".

34. Defendants' policy underwritten by American General (policy #YMA0086144) was signed at American General's home office on May 5, 2005. See Policy attached hereto as Exhibit "D".

35. U.S. Bancorp informed Plaintiff's decedent that it was providing his coverage, underwritten by American General, by letter dated May 17, 2005 enclosing the policy. See letter dated May 17, 2005 attached hereto as Exhibit "E".

36. In January 2006 Plaintiff and Plaintiff's decedent returned from California to reside again in Philadelphia.

37. On March 11, 2006, Plaintiff's decedent suffered a terminal gunshot wound to the head.

38. Plaintiff was the named beneficiary to policy #YMA0086144.

39. Plaintiff provided prompt notice of Samuel Everett's death in accordance with the terms of the policy.

40. By letter dated April 3, 2006 Defendant's claims department informed Plaintiff that they received her loss notice and requested additional information regarding Plaintiff's decedent. Plaintiff promptly forwarded the requested information. See letter dated April 3, 2006 attached hereto as Exhibit "F".

41. By letter dated April 25, 2006 Plaintiff was informed that Defendant was hiring an investigative agency to conduct an investigation into Samuel Everett's medical and financial background. See letter dated April 25, 2006 attached hereto as Exhibit "G".

B-7

42. As requested by Defendant, Plaintiff provided 2004 tax returns for Samuel Everett in or around the first week of June 2006.

43. By letter dated November 20, 2006, Plaintiff was informed that Defendant was denying Plaintiff's claim for benefits. See letter dated November 20, 2006, attached hereto as Exhibit "H".

44. Defendants asserted that the policy was being rescinded because Everett had been convicted or plead guilty to a felony on two separate occasions contrary to the representation set forth on Paragraph 10. F of the application. Defendants also asserted that Plaintiff's decedent did not have $60,000 "personal income" as indicated on the application.

45. Plaintiff's business, of which he was the sole proprietor, had in excess of $60,000 gross income.

46. The Application was ambiguous as to the meaning of "personal income" and time period for which this information was sought.

47. Plaintiff believes and therefore avers that Defendants were aware or should have been aware upon reasonable investigation of the information upon which it based its denial at or around the time it issued policy YMA0086144. Alternatively, Plaintiff alleges that the medical examiner's knowledge is imputed to Defendants.

48. Plaintiff therefore avers that Defendant knew or should have known upon reasonable investigation the facts upon which it based its denial prior to the time of Everett's death.

49. Defendant waived its rights to rescind the policy by accepting Everett's application and by its delay in accepting or denying Plaintiff's claim.

50. Plaintiff's response to Question 10. F was not material misrepresentation.

51. Plaintiff's response to Question 10. F was not made with intent to deceive.

B-8

52. Plaintiff's response to Question 10. F did not cause Defendants to suffer any prejudice with respect to its investigation or underwriting activities.

53. Plaintiff's response to "regarding his income" was not material misrepresentation.

54. Plaintiff's response to "regarding his income" was not made with intent to deceive.

55. Plaintiff's response to "regarding his income" did not cause Defendants to suffer any prejudice with respect to its investigation or underwriting activities

## COUNT I
## BREACH OF CONTRACT

56. Plaintiff hereby incorporates by reference the allegations set forth in Paragraphs 1-55 as if set forth herein at length.

57. Defendants' rescission and refusal to pay is a breach of the insurance policy.

58. Defendants are estopped from denying Plaintiff's claim by virtue of their agent/employee's conduct.

59. Defendants have no evidence that the alleged misrepresentation was material or knowing.

60. Plaintiff is entitled to benefits in the amount of One Million ($1,000,000.00) Dollars under the policy.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendants in an amount in excess of $75,000.00, attorneys fees, interest, costs, compensatory and exemplary damages as appropriate.

## ALTERNATIVE - COUNT II
## FRAUD

61. Plaintiff hereby incorporates by reference the allegations set forth in Paragraphs 1-60 as if set forth herein at length.

B-9

62. Defendants and/or their agents acting within the scope of their employment informed Plaintiff and Plaintiff's decedent that they did not have to provide a complete response to Application question 10.F.

63. Plaintiff asserts in the alternative that the medical examiner's statement was knowingly false.

64. The medical examiner's statement was made with the intent to lead Plaintiff and Plaintiff's decedent into believing that the Application contained no material misrepresentation.

65. Plaintiff and Plaintiff's decedent reasonably relied on this statement.

66. As a direct and proximate result of the medical examiner's misrepresentation Plaintiff's decedent made misrepresentations on his Application which formed the basis of Defendants' rescission.

67. As a direct and proximate result of the misrepresentation the life of Plaintiff's decedent was not adequately insured.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendants in an amount in excess of $75,000.00, attorneys fees, interest, costs, compensatory and exemplary damages.

## ALTERNATIVE - COUNT III
## VIOLATION OF UNFAIR CONSUMER PRACTICES ACT

68. Plaintiff hereby incorporates by reference the allegations set forth in Paragraphs 1-67 as if set forth herein at length.

69. Defendants violated, as set forth above, applicable consumer protection laws.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendants in an amount in excess of $75,000.00, attorneys fees, interest, costs, compensatory and exemplary damages.

B-10

## July Trial Demand

Pursuant to Rule F.R.Civ.P. 38(b), Plaintiff hereby demands a trial by jury of twelve jurors as to all issues so triable.

Dated: 5/23/08

BY: _____

BRUCE L. NEFF, ESQUIRE
Attorney for Plaintiff
Identification No.: 02415
Two Penn Center Plaza, Suite 530
15th Street & JFK Boulevard
Philadelphia, PA  19102
(215) 564-3331
(215) 564-6952 (fax)
bneff@neffandassociates.com
Validation of Signature Code: BLN3365

B-11