☑ American General Life Insurance Company, Houston, TX       ☐ The United States Life Insurance Company in the City of
Members of American International Group, Inc.                                New York, New York, NY

The insurance company checked above is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company is responsible for such obligations or payments.

**1. Proposed Insured** Name _SAMUEL M. EVERETT_   Social Security # _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_
Sex ☑ M ☐ F  Birthplace (state, country) _PA_   Date of Birth _8-1-74_  Age _30_
Tobacco Use  Have you ever used any form of tobacco or nicotine products? ☐ yes ☑ no If yes, date of last use _____
If yes, type and quantity of tobacco or nicotine products used _____
Driver's License No. _D 9263 452_   License State _CA_
U.S. Citizen ☑ yes ☐ no  If no, Date of Entry _____   Type of Visa _____
Address _7840 BLOSSOM LN_   City, State _COTTON GROVE, CA_  ZIP _91845_
Home Phone _619.842.0223_  Work Phone _619.303.0223_  E-mail Address _619-460-4826_
Employer _EVER STRONG INC_  Occupation _INVESTMENT MGR_ Length of Employment _LYR_
Duties _BUSINESS_
Personal Income $ _60,000_   Household Income $ _100,000_   Net Worth $ _____

**2. Owner** ☑ Proposed Insured  ☐ Trust  ☐ Someone other than Proposed Insured or Trust
**A. Complete if other than the proposed insured is owner** (If contingent owner is required, use Remarks section.)
Name _____  Social Security or Tax ID # _____  Date of Birth _____
Address _____  City, State _____  ZIP _____
Home Phone ( ) _____  Relationship to Proposed Insured _____
**B. Complete if owner is a trust** (If trustee is premium payer also complete section 7 part D.)
Exact Name of Trust _____  Trust Tax ID # _____
Current Trustee(s) _____  Date of Trust _____

**3. Plan of Insurance**  Product Name _LTG 2000 - 30_  Amount Applied For $ _1,000,000_
Premium Class Quoted _✓_ _76.13_  Reason for Insurance _PROTECTION_
Riders ☐ Waiver of Premium ☐ Child $ _____  (Complete Child Rider Attachment) ☐ No current children

**4. Primary**  Name _NIKETA L. EVERETT_  Relationship _SPOUSE_  Share _100_%
Beneficiary  Name _____  Relationship _____  Share _____%

**5. Contingent**  Name _____  Relationship _____  Share _____%
Beneficiary  Name _____  Relationship _____  Share _____%

**6. Trust Information (if Beneficiary)**  Exact Name of Trust _____
Trust Tax ID # _____  Current Trustee(s) _____  Date of Trust _____

**7. Premium Payment** ☑ Modal $ _76.13_   ☐ Single $ _____
**A. Frequency of modal premium:** ☐ Annual  ☐ Semi-annual  ☐ Quarterly  ☑ Monthly (Bank Draft)
**B. Method:** ☐ Direct Billing ☐ Bank Draft (Complete Bank Draft Authorization.) ☐ List Bill: Number _____
☐ Other (Please explain.) _____
**C. Amount submitted with application** $ _0_
**D. Premium payer** (Complete if other than owner)
Name _____  Social Security or Tax ID # _____  Home Phone ( ) _____
Address _____  City, State _____  ZIP _____

**8. Health and Age Questions** (If the proposed insured answers yes to either question, temporary insurance is not available, the agreement will be void and any payment submitted will be refunded.)
A. Has the proposed insured ever had a heart attack, stroke, cancer, diabetes, or disorder of the immune system, or during the last two years been confined in a hospital or other health care facility or been advised to have any diagnostic test or surgery not yet performed?  ☐ yes ☑ no
B. Is the proposed insured age 71 or above?  ☐ yes ☑ no

AGLC 1092-40-05

Indicate all insurance policies or annuities in force on the Proposed Insured

| Check if none Policy Number | Insurance Company | Type(s) [see above] | Year of Issue | Face Amount | Replacement* |
|---|---|---|---|---|---|
| | | | | | ☐ yes ☐ no |
| | | | | | ☐ yes ☐ no |

Type: i=individual, b=business, g=group, p=pending life insurance or annuity

*Replacement means that the insurance being applied for may replace, change or use any monetary value of any existing or pending life insurance policy or annuity. If replacement may be involved, complete and submit replacement-related forms. Please note: certain states require completion of replacement related forms even when other life insurance or annuities are not being replaced by the policy being applied for.

**18. Background Information**

A. Does the proposed insured intend to travel or reside outside of the United States or Canada within the next two years?  ☐ yes ☑ no

*(If yes, list country, date, length of stay and purpose.)* _____

B. In the past five years, has the proposed insured participated in, or does he or she intend to participate in: any flights as a trainee, pilot or crew member; scuba diving; skydiving or parachuting; ultralight aviation; auto racing; cave exploration; hang gliding; boat racing; mountaineering; extreme sports or other hazardous activities? *(If yes, circle the applicable activities and complete the Aviation and/or Avocation Questionnaire.)*  ☐ yes ☑ no

C. Has the proposed insured:

1) During the past 90 days submitted an application for life insurance to any other company or begun the process of filling out an application? *(If yes, list company name, amount applied for, purpose of insurance and if application will be placed.)*  ☐ yes ☑ no

_____

2) Ever had a life or disability insurance application modified, rated, declined, postponed, withdrawn, cancelled or refused for renewal? *(If yes, list date and reason.)*  ☐ yes ☑ no

D. Has the proposed insured ever filed for bankruptcy?  ☐ yes ☑ no

*(If yes, list chapter filed, date, reason and if discharged.)* _____

E. In the past five years, has the proposed insured been charged with or convicted of driving under the influence of alcohol or drugs or had any driving violations?  ☐ yes ☑ no

*(If yes, list date, state, license no. and specific violation.)* _____

F. Has the proposed insured ever been convicted of or pled guilty or no contest to a felony or does he or she have any such charge pending against him or her? *(If yes, list date, state and felony.)*  ☐ yes ☑ no

**REMARKS**

**19. Details and Explanations** _____

_____

_____

**Agent/Agency Information**

Does the proposed insured have any existing or pending annuity or life insurance contracts?  ☐ yes ☑ no

If yes, will the proposed insured replace, change, or use any monetary value of any existing or pending life insurance policy or annuity with any company in connection with the purchase of insurance?  ☐ yes ☐ no

*(If yes, please provide details in the Remarks section and attach all replacement-related forms. Certain states require completion of replacement-related forms even when life insurance or annuities are not being replaced by the policy being applied for.)*

I have ordered/obtained the following requirements:  ☐ APS  ☐ Blood Profile/Urinalysis  ☐ EKG  ☐ Inspection Report  ☐ MD Exam  ☐ Oral Fluids (as state permits)  ☐ Paramedical Exam  ☐ Treadmill  ☐ Urinalysis Only  *(If requirements are scheduled, please provide name of examiner, clinic and date ordered.)*

| Agent(s) to Receive Commission | Agency Number | Agent Number | % of Commission |
|---|---|---|---|
| *BURTON GAYZER* | | *1H035* | |

I certify that the information supplied by the proposed insured/owner has been truthfully and accurately recorded on the Part A application.

Writing Agent Name (please print) *BURTON GAYZER*      State License # *DDG9912*

X _____ (Writing Agent Signature)      X _____ Countersigned (Licensed resident agent if state required)

Social Security or Tax ID # _____      Phone # *586 521 5278*      E-mail Address _____

AGLC10414-A3

FL *U.S. BANK*      Exam Date *3-12-05*      Exam Time *9AM*

B-13



☐ **American General Life Insurance Company, Houston, TX**
☐ **The United States Life Insurance Company in the City of New York, New York, NY**

Members of American International Group, Inc.

In this application, "Company" refers to the insurance company whose name is checked above.

The insurance company checked above is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company shown is responsible for such obligations or payments.

| Personal Information |
|---|

**1. Primary Proposed Insured**
Name _Samuel M. Everett_    Date of Birth _8-1-74_    Social Security # _176 56 2512_

**2. Other Proposed Insured**
Name _____    Date of Birth _____    Social Security # _____

**3. Children** *(Provide name and date of birth for all children.)*
_____
_____

| Medical History |
|---|

**4. Physician Information**
Name and address of each proposed insured's personal physician(s). *(Write None if proposed insured(s) do not have one.)*
Primary Proposed Insured _None_
Other Proposed Insured _____
Child(ren) _____
Name of insured, date, reason, findings and treatment at last visit _____
_____
_____
_____
_____

**5. Height and Weight**
Primary Proposed Insured _5_ ft. _8_ in. _335_ lbs.    Other Proposed Insured _____ ft. _____ in. _____ lbs.
Child Name _____ _____ ft. _____ in. _____ lbs.    If less than 1 yr. old, weight at birth _____
Child Name _____ _____ ft. _____ in. _____ lbs.    If less than 1 yr. old, weight at birth _____
Child Name _____ _____ ft. _____ in. _____ lbs.    If less than 1 yr. old, weight at birth _____
Has any proposed insured had any weight change in excess of 10 lbs. in the past year? ☑ yes ☐ no If yes, complete:
Name _Samuel Everett_    Loss ___ lbs.    Gain _10_ lbs.    Reason _?_

**6. Family History**

| | Age if Living | Age at Death | Heart Disease? | Cancer History? |
|---|---|---|---|---|
| **Primary Proposed Insured** | | | | |
| Father | 47 | ___ | ☑ No ☐ Yes, age of onset ___ | ☑ No ☐ Yes, age of onset ___ Type ___ |
| Mother | 47 | ___ | ☑ No ☐ Yes, age of onset ___ | ☑ No ☐ Yes, age of onset ___ Type ___ |
| **Other Proposed Insured** | | | | |
| Father | ___ | ___ | ☐ No ☐ Yes, age of onset ___ | ☐ No ☐ Yes, age of onset ___ Type ___ |
| Mother | ___ | ___ | ☐ No ☐ Yes, age of onset ___ | ☐ No ☐ Yes, age of onset ___ Type ___ |

B-14

**7: Personal Health History**

Complete questions A through G for all proposed insureds who are applying. If yes answer applies to any proposed insured, provide details, such as: proposed insured's name, date of first diagnosis, name and address of doctor, tests performed, test results, medication(s) or recommended treatment in the area provided.

A. Has any proposed insured ever been diagnosed as having, been treated for, or consulted a licensed health care provider for:

  1) heart disease, heart attack, chest pain, irregular heartbeat, heart murmur, high cholesterol, high blood pressure or other disorder of the heart?

  2) a blood clot, aneurysm, stroke, or other disease, disorder or blockage of the arteries or veins?    ☐ yes ☑ no

  3) cancer, tumors, masses, cysts or other such abnormalities?    ☐ yes ☑ no

  4) diabetes, a disorder of the thyroid or other glands or a disorder of the immune system, blood or lymphatic system?    ☐ yes ☑ no

  5) colitis, hepatitis or a disorder of the esophagus, stomach, liver, pancreas, gall bladder or intestine?    ☐ yes ☑ no

  6) a disorder of the kidneys, bladder, prostate or reproductive organs or sugar or protein in the urine?    ☐ yes ☑ no

  7) asthma, bronchitis, emphysema, sleep apnea or other breathing or lung disorder?    ☐ yes ☑ no

  8) seizures, a disorder of the brain or spinal cord or other nervous system abnormality, including a mental or nervous disorder?    ☐ yes ☑ no

  9) arthritis, muscle disorders, connective tissue disease or other bone or joint disorders?    ☐ yes ☑ no

*(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

B. Is any proposed insured currently taking any medication, treatment or therapy or under medical observation? *(If yes, explain.)*    ☐ yes ☑ no

| Name of Proposed Insured | Details |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

C. Has any proposed insured in the past three years had but not sought treatment for:

  1) fainting spells, nervous disorder, headaches, convulsions or paralysis?    ☐ yes ☑ no

  2) any pain or discomfort in the chest or shortness of breath?    ☐ yes ☑ no

  3) disorders of the stomach, intestines or rectum, or blood in the urine?    ☐ yes ☑ no

*(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

B-15

**Personal Health History (cont.)**

*If yes answer applies to any proposed insured, provide details, such as: proposed insured's name, date of first diagnosis, name and address of doctor, tests performed, test results, medication(s) or recommended treatment in the area provided.*

**D. Has any proposed insured ever:**

1) sought or received advice, counseling or treatment by a medical professional for the use of alcohol or drugs, including prescription drugs? ☐ yes ☑ no

2) used cocaine, marijuana, heroin, controlled substances or any other drug, except as legally prescribed by a physician? ☐ yes ☑ no

*(If yes answered to D1 or D2, complete Drug/Alcohol Questionnaire.)*

**E. Has any proposed insured ever been diagnosed or treated by any member of the medical profession for AIDS Related Complex (ARC) or Acquired Immune Deficiency Syndrome (AIDS)?** *(If yes, explain.)* ☐ yes ☑ no

| Name of Proposed Insured | Details |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |

**F. In the past 10 years, has any proposed insured:**

1) been hospitalized, consulted a health care provider or had any illness, injury or surgery? ☑ yes ☐ no

2) had any laboratory tests, treatments or diagnostic procedures, including x-rays, scans or EKGs? ☐ yes ☑ no

3) been advised to have any diagnostic test, hospitalization or treatment that was not completed? ☐ yes ☑ no

4) received or claimed disability or hospital indemnity benefits or a pension for any injury, sickness, disability or impaired condition? ☐ yes ☑ no

*(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
| F 1  1998  Gun shot lower back. Surgically removed & no complications. Hospitalized 4 days. Temple Hosp Philadelphia PA | |
| | |
| | |
| | |

**G. Does any proposed insured have any symptoms or knowledge of any other condition that is not disclosed above?** *(If yes, explain.)* ☐ yes ☑ no

| Name of Proposed Insured | Details |
|---|---|
| | |
| | |
| | |
| | |
| | |

KS-16

**Statements and Signatures**

**Statement by the Proposed Insured(s)**

I have read the above statements or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and if applicable, related forms; and (2) shall be the basis for any policy issued. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) it is within its contestable period; and (2) such misrepresentation materially affects the acceptance of the risk. Except as may be provided in a Limited Temporary Life Insurance Agreement (LTLIA), I understand and agree that no insurance will be in effect pursuant to this application, or under any new policy issued by the Company, unless or until: the policy has been delivered and accepted; the full first modal premium for the issued policy has been paid; and there has been no change in the health of any proposed insured that would change the answers to any questions in the application.

I understand and agree that no agent is authorized to: accept risks or pass upon insurability; make or modify contracts; or waive any of the insurer's rights or requirements.

**Fraud**

Any person who, with intent to defraud or facilitate a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud.

**Proposed insured(s) Signature(s)**

Signed at (city, state) _Lemon Grove Ca_     On (date) _3-22-05_

X _[signature]_     X _____
Primary Proposed Insured (if under age 15, signature of parent or guardian)     Other Proposed Insured (if under age 15, signature of parent or guardian)

**Signature(s) of Interviewer(s)**
To be signed by all interviewers, as applicable.

I certify that the information supplied by the proposed insured(s) has been truthfully and accurately recorded on the Part B application.

_Burton Garzer_
Writing Agent Name (please print)     Writing Agent #

X _____     X _____
Writing Agent Signature     Countersigned (Licensed resident agent if state required)

I certify that the information supplied by the proposed insured(s) has been truthfully and accurately recorded on the Part B application.

_____     _____
Other Company Representative Name (please print)     Company

X _____
Other Company Representative Signature

**Paramedical Examiner/Medical Doctor Signature**
Agent should inform paramed or medical doctor of proper location to send form upon completion.

I certify that this exam was conducted the _22_ day of _March_, 20_05_, at _1_ ☐ am ☑ pm

Examiner's Address _____     Portamedic #475
                                         4891 Pacific Highway Suite 103
Examiner's Phone # (     ) _____     San Diego, Ca 92110
                                         (619) 297-5642
Examiner's Name _____     Tax ID 221659359

Examiner's Signature X _Marcia Flores RN_

Paramed: Use company stamp below.

AGLC 100566-2003     Page 4 of 4

B-17

**Physical Measurements**

**1. Primary Proposed Insured**

A. Name _Samuel H. Everett_

B. Build: Height (in shoes) _5_ ft. _8½_ in.    Weight (clothed) _240_ lbs. (Please weigh insured.)

C. Blood Pressure (Record all readings.)

If blood pressure exceeds 140/90, please repeat determination at end of examination and record in space provided.

Treated ☑ yes ☐ no    Rx _____

| | Initial Measurement | Repeat Measurement |
|---|---|---|
| Systolic BP | 128 | |
| Diastolic 5th Phase BP | 78 | |
| Pulse Rate | 64 | |
| Irregularities Per Min. | 0 | |

D. Other (Males only): Chest (Full Inspiration) _47_ Chest (Forced Expiration) _43_ Abdomen (at Umbilicus) _41_

**2. Other Proposed Insured**

A. Name _____

B. Build: Height (in shoes) ____ ft. ____ in.    Weight (clothed) ____ lbs. (Please weigh insured.)

C. Blood Pressure (Record all readings.)

If blood pressure exceeds 140/90, please repeat determination at end of examination and record in space provided.

Treated ☐ yes ☐ no    Rx _____

| | Initial Measurement | Repeat Measurement |
|---|---|---|
| Systolic BP | | |
| Diastolic 5th Phase BP | | |
| Pulse Rate | | |
| Irregularities Per Min. | | |

D. Other (Males only): Chest (Full Inspiration) _____ Chest (Forced Expiration) _____ Abdomen (at Umbilicus) _____

**Report By Examining Medical Doctor**

**Instructions to doctor:**

To be completed in private by doctor only. This report is confidential between the Company and the doctor. Examination of heart and lungs must be with stethoscope against bare skin.

1. Name of person examined _____

2. Did you weigh proposed insured? _____

3. Is appearance unhealthy or older than stated age?    ☐ yes ☐ no

4. Heart    ☐ yes ☐ no

  a. Is there any cyanosis, edema, or evidence of peripheral vascular disease, arteriosclerosis or other cardiovascular disorder?    ☐ yes ☐ no

  b. Is heart enlarged? (If yes, describe.) _____    ☐ yes ☐ no

  c. Is murmur present? (If yes, complete 4d.) _____    ☐ yes ☐ no

  d. Before exercise, murmur is:

    ☐ Constant   Transmitted to where? _____

    ☐ Inconstant  Localized at:   ☐ Apex   ☐ Base   ☐ Elsewhere _____

    ☐ Systolic (Give details.) _____

    ☐ Diastolic   Murmur grade:  1/6   2/6   3/6   4/6   5/6   6/6   (please circle)

    After valsalva, murmur is:

    ☐ Unchanged   ☐ Decreased   ☐ Increased   ☐ Absent

    Your impression _____

_____

_____

Exam page 1

B-18

**Report by Examining Medical Doctor (continued)**

5. Has this examination revealed any abnormality of the following: *(Circle applicable items if listed.)*

   a) Eyes, ears, nose, mouth and throat? *(if vision or hearing markedly impaired, indicate degree and correction.)*  ☐ yes ☐ no

   b) Endocrine system *(including thyroid)*?  ☐ yes ☐ no

   c) Nervous system *(including reflexes, gait, paralysis)*?  ☐ yes ☐ no

   d) Respiratory system?  ☐ yes ☐ no

   e) Abdomen *(including scars)*?  ☐ yes ☐ no

   f) Genito-urinary system?  ☐ yes ☐ no

   g) Skin *(including scars)*, lymph nodes, blood vessels *(including varicose veins)*?  ☐ yes ☐ no

   h) Musculoskeletal system *(including spine, joints, amputations, deformities)*?  ☐ yes ☐ no

6. Do you have any pertinent information not disclosed above? *(If yes, describe in question 9.)*  ☐ yes ☑ no

7. Have any of the following been completed in conjunction with this exam?  ☑ yes ☐ no

   ☑ Blood  ☑ Urine  ☐ EKG  ☐ Stress Test  ☐ Chest x-ray

8. Specimen kit
   Please indicate where and when specimen kit was sent  ☐ CRL  ☑ Other *Heritag*  Date mailed **3-22-05**

9. Details of yes answers to Questions 1–8

   _____
   _____
   _____
   _____
   _____
   _____
   _____

10. Are you related to the proposed insured by blood or marriage or do you have any business or professional relationship with the proposed insured? *(If yes, explain.)*  ☐ yes ☑ no

   _____

| Signatures |
| --- |

**Paramedical Examiner/Medical Doctor Signature**

I certify that this exam was conducted the _22_ day of _March_, 20_05_ at _1_ ☐ am ☑ pm

Location of Exam _____

Authorized By _____

Examiner's Address _____ Portamedic #475

4891 Pacific Highway Suite 103
San Diego, Ca 92110
(619) 297-5642

Examiner's Phone # _____ Tax ID 221659359

Examiner's Name _____

Examiner's Signature  X _Marcia Floyd RN_

Paramed: Use company stamp below.

B-14

**AIG AMERICAN GENERAL**

## HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT ("HIPAA")
### Authorization to Obtain and Disclose Information

Samuel M Everett                                                    8 / 1 /1974
**Name of Patient/Proposed Insured (Please Print)**                **Date of Birth**

I hereby authorize all of the people and organizations listed below to give AIG Life Insurance Company, AIG Life Insurance Company of Puerto Rico, American General Life Insurance Company, American Home Assurance Company, Delaware American Life Insurance Company, Pacific Union Assurance Company, The United States Life Insurance Company in the City of New York, and the American General Life Companies, (an affiliated service company), (collectively the "Companies"), and their authorized representatives, including agents and insurance support organizations, (collectively, the "Recipient"), the following information:

- any and all information relating to my health (except psychotherapy notes) and my insurance policies and claims, including, but not limited to, information relating to any medical consultations, treatments, or surgeries; hospital confinements for physical and mental conditions; use of drugs or alcohol; and communicable diseases including HIV or AIDS.

I hereby authorize each of the following entities to provide the information outlined above:

- any physician or medical practitioner;
- any hospital, clinic or other health care facility;
- any insurance or reinsurance company (including the Recipient for purposes of disclosing information related to other insurance policies that provide me with insurance coverage);
- any consumer reporting agency or insurance support organization;
- my employer, group policy holder, or benefit plan administrator; and
- the Medical Information Bureau (MIB).

I understand that the information obtained will be used by the Recipient to:

- determine my eligibility for insurance;
- underwrite my application for insurance;
- determine my eligibility for benefits under any temporary insurance; and
- if a policy is issued, determine my eligibility for benefits and contestability of the policy.

I hereby acknowledge that the insurance companies listed above are subject to federal privacy regulations. I understand that information released to the Recipient will be used and disclosed as described in the AIG American General Notice of Health Information Privacy Practices, but that upon disclosure to any person or organization that is not a health plan or health care provider, the information may no longer be protected by federal privacy regulations.

I may revoke this authorization at any time, except to the extent that action has been taken in reliance on this authorization or other law allows the Recipient to contest a claim under the policy or to contest the policy itself, by sending a written request to: AIG American General Service Center, P.O. Box 4373, Houston, TX 77210-4373. I understand that my revocation of this authorization will not affect uses and disclosures of my health information by the Recipient for purposes of underwriting, claims administration and other matters associated with my application for insurance coverage and the administration of any policy issued as a result of that application.

I understand that the signing of this authorization is voluntary; however, if I do not sign the authorization, the Companies may not be able to obtain the medical information necessary to consider my application.

This authorization will be valid for 24 months. A copy of this authorization will be as valid as the original. I understand that I am entitled to receive a copy of this authorization.

_____                    3/22/05
**Signature of Proposed Insured or**                 **Date**
**Proposed Insured's Personal Representative**


_____
**Description of Authority of Personal Representative**
**(if applicable)**

AGLC100538                                                                    Rev0703

B-20

Burton Gavzer

## AUTHORIZATION AND [SIGNATURE]

American General Life Insurance Company, Houston, TX | The United States Life Insurance Company in the City of
New York, New York, NY

The above listed life insurance company as selected on page one of this application is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company is responsible for such obligations or payments. In this application, "Company" refers to the insurance company which was selected on page one.

**Authorization to Obtain and Disclose Information and Declaration**

I give my consent to any of the entities listed below to give the Company, its legal representative, or American General Life Companies, an (affiliated service company), all information they have pertaining to medical consultations, treatments, or surgeries; hospital confinements for physical and mental conditions; use of drugs or alcohol; or any other information; for me or my minor children. Other information could include items such as: personal finances, habits, hazardous avocations, motor vehicle records from the Department of Motor Vehicles or court records, foreign travel, etc. The list of entities for which I give my consent to provide the information above is as follows: any physician or medical practitioner; any hospital, clinic or other health care facility; any insurance or reinsurance company; any consumer reporting agency or insurance support organization; my employer; or the Medical Information Bureau (MIB).

I understand the information obtained will be used by the Company to determine eligibility for insurance and eligibility for benefits under an existing policy. The Company may disclose any information gathered during its evaluation of my application to: its reinsurers, the MIB, other persons or organizations performing business or legal services in connection with my application or claim, me, any physician designated by me, or any person or entity required to receive such information by law or as I may further consent.

I, as well as any person authorized to act on my behalf, may, upon written request, obtain a copy of this consent from American General Life Companies. I understand this consent may be revoked at any time by sending a written request to American General Life Companies, ATTN: Underwriting Department at P.O. Box 1631, Houston, TX 77251-1631.

This consent will be valid for 24 months from the date of this application. I agree that a copy of this consent will be as valid as the original. I authorize the Company to obtain an investigative consumer report on me. I understand that I may: request to be interviewed for the report; and receive, upon written request, a copy of such report. ☐ Check if you wish to be interviewed.

I have read the above statements or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application (1) will consist of Part A, Part B, and if applicable, related forms; and (2) shall be the basis for any policy issued. I understand that any misrepresentation made in this application and relied on by the insurer issuing the policy may be used to reduce or deny a claim or void the policy, if (1) it is within its contestable period; and (2) such misrepresentation materially affects the acceptance of the risk. Except as may be stated in a Limited Temporary Life Insurance Agreement (LTLIA) for which all requirements are met, I understand and agree that no insurance will be in effect under this application, or any new policy issued by the insurer, unless or until: the policy has been delivered and accepted; the full first modal premium for the policy has been paid; and there has been no change in the health of the proposed insured that would change the answers to any questions in the application.

I understand and agree that no agent may: accept risks or pass upon insurability; make or modify contracts; or waive any of the insurers rights or requirements.

I have received a copy of the Notices to the Proposed Insured.

Limited Temporary Life Insurance Agreement– If eligible, I have received and accepted the LTLIA. This insurance is available only if the full first modal premium is submitted with this application and "no" answers have been given by the proposed insured to the Health and Age questions in section 8.

Under penalties of perjury, I certify: (1) that the number shown on this application is my correct Social Security or Tax ID number; (2) that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code; and (3) that I am a U.S. person (including a U.S. resident alien). The Internal Revenue Service does not require my consent to any provision of this document other than the certifications required to avoid backup withholding. You must cross out item (3) if you are subject to backup withholding and cross out item (3) if you are not a U.S. person (including a U.S. resident alien).

Proposed Insured/Owner Signature(s)

Signed at (City, State)  LEMON GROUP CA    On (Date)  3-22-05

X _____    X _____
Primary Proposed Insured (If under age 18, signature of parent or guardian)    Owner (If other than proposed insured)

Samuel M Everett

361186

B-21

**AIG** **AMERICAN GENERAL**

Member Company of American International Group, Inc.

March 1, 2005

Samuel M Everett
7940 Blossom Lane
Lemon Grove, CA   91945

Dear Valued Customer:

Thank you for choosing the affordable term life insurance program offered to U.S. Bank customers.

The underwriter of this coverage, American General Life, was rated A++ (SUPERIOR) by A.M. Best Company, an independent national organization that rates the financial strength and performance of insurance companies.

You have been scheduled for a brief medical exam on March 12, 2005 between 9:00-10:00 a.m. If you need to reschedule this appointment, please call the examiner directly at 1.800.378.7022, between 11:00 a.m. and 8:00 p.m., Eastern Time.

Your monthly quoted premium of **$76.13** is based on the information you provided at the time of application. However, your actual premium will be determined after the underwriting process. For your convenience, your monthly premium will be deducted from the checking or savings account that you designate when your policy is issued. Prior to policy issuance, you will be provided with a bank required authorization form for your signature. **This form must be signed and returned to us with a voided check attached to it in order for your premium to be deducted from your account.**

Please note that it will take approximately five to eight weeks from the time of your medical exam to process your application.

If you have any questions, please call your licensed representative, **Burton Gavzer** at 1.888.202.4272 ext. 166, Monday through Friday between the hours of 10:00 a.m. and 7:00 p.m., Central Time.

Sincerely,

*Connie Martin*

Connie Martin
Life Insurance Program Coordinator

Insurance Products:  Not a Deposit – Not FDIC-Insured – Not Insured by any Federal Government Agency – Not Guaranteed by the Bank

B-22

B-23



**AMERICAN GENERAL**

April 15, 2005

Samuel M Everett
7940 Blossom Ln
Lemon Grove CA 91945-4223

Re: Samuel M Everett
Policy Number: YMA0086144

Dear Samuel M Everett:

Thank you for submitting a life insurance application to American General Life Insurance Company. We are pleased to be able to approve the policy. However, because of your build, this coverage was approved at standard non tobacco rates.

This change will result in a higher premium than was originally quoted. The coverage still represents an excellent life insurance value, and your sales representative will be glad to discuss the value of this. A policy will be issued unless we are advised by your sales representative. If we have been notified not to issue a policy, this offer will be valid for sixty (60) days.

Should you desire the specific items that support the reason(s) listed above, please submit a written request within ninety (90) business days from the date of mailing of this letter to the address shown below. Please indicate whether you desire specific items of medical record information supplied by a medical care institution or medical professional disclosed directly to you or prefer to designate a medical professional to receive this information. Please provide the name and address of the designated medical professional. If you would like a copy of the lab results done in conjunction with your application, please complete and mail the enclosed request card.

The written request must be signed by the proposed insured or, if the proposed insured is a minor or has a legal guardian, the parent or legal guardian must sign the request. We will respond within twenty-one (21) business days of the receipt of the written request.

You can also request corrections, amendments or deletions to information discussed above. If your requested corrections, amendments or deletions are not made, you will be notified and told of the reason(s) for the refusal. In that event, you may file a statement setting forth what you think is the correct, relevant or fair information and why you disagree with our refusal to correct, amend or delete information in your file.

Please note that no coverage is in effect and any temporary life insurance agreement, if applicable, is hereby no longer in force. If you and/or the proposed owner do not wish to accept this offer, any money submitted with the application will be refunded to you or the proposed owner on the earlier of (1) the date this offer expires, or (2) the date you or the proposed owner informs us that our offer is refused or the policy is returned within the "free-look" period.

Once again, thank you for considering American General Life Insurance Company for your insurance needs. If you have any questions regarding this matter, please contact your Representative, BURTON H GAVZER, at 818-577-1300.

**Midwest Operations Center**
PO Box 401 • Milwaukee, WI 53201-0401

MAGLNB001

B-24

Sincerely,

Christine Coblentz
New Business Department

cc:    BURTON H GAVZER /    1H025

B-25

# AMERICAN GENERAL LIFE Insurance Company

2727-A Allen Parkway, Houston, Texas 77019 1-800-487-5433

American General Life Insurance Company, a stock company, will pay the benefits of this policy subject to its provisions. This page and the pages that follow are part of this policy.

Signed at Our Home Office at 2727-A Allen Parkway, Houston, Texas 77019.

*Elizabeth M. Tuck*

General Counsel and Secretary

President

## READ YOUR POLICY

This policy is a legal contract between the Owner and American General Life Insurance Company. Read Your policy carefully.

## RIGHT TO RETURN POLICY

The Owner may return this policy to Us at the above address or to the agent from whom it was purchased within 30 days after receipt. This policy will then be cancelled as of its date of issue and any premium paid will be refunded.

This is a term Endowment policy providing a death benefit prior to the Final Expiry Date as long as this policy is in force. The Cash Value is payable on the Initial Expiry Date, if the Insured is alive and this policy is in force. Life insurance coverage may be renewed annually following the initial Expiry Date to the policy anniversary nearest the Insured's 95th birthday.

Renewable Level Benefit Term Endowment Policy
Insurance Payable In Event Of Death Prior to Final Expiry Date

Adjustable Premium
No Dividends

ROP 2002AG

YMA0086144

Page 1

B-26

## CALIFORNIA LIFE AND HEALTH INSURANCE
## GUARANTY ASSOCIATION ACT
### SUMMARY DOCUMENT AND DISCLAIMER

Residents of California who purchase life and health insurance and annuities should know that the insurance companies licensed in this state to write these types of insurance are members of the California Life and Health Insurance Guaranty Association ("CLHIGA"). The purpose of this Association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided through the Association is not unlimited, as noted in the box below, and is not a substitute for consumers' care in selecting insurers.

---

**The California Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in California. You should not rely on coverage by the Association in selecting an insurance company or in selecting an insurance policy.**

**Coverage is *NOT* provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus.**

**Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the Guaranty Association to induce you to purchase any kind of insurance policy.**

**Policyholders with additional questions should first contact their insurer or agent or may then contact**

| | | |
|---|---|---|
| **California Life and Health Insurance** | **or** | **Consumer Service Division** |
| **Guaranty Association** | | **California Department of Insurance** |
| **P.O. Box 17319** | | **300 South Spring Street** |
| **Beverly Hills, CA 90209-3319** | | **Los Angeles, California 90013** |

---

Below is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the Act or the rights or obligations of the Association.

## COVERAGE

Generally, individuals will be protected by the California Life and Health Insurance Guaranty Association if they live in this state and hold a life or health insurance contract, or an annuity, or if they are insured under a group insurance contract, issued by a member insurer. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

**(please turn to back of page)**

L 5322-5

B-27

## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are not protected by this Guaranty Association if:

- Their insurer was not authorized to do business in this state when it issued the policy or contract;
- Their policy was issued by a health care service plan (HMO), Blue Cross, Blue Shield, a charitable organization, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company, an insurance exchange, or a grants and annuities society;
- They are eligible for protection under the laws of another state. This may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state.

The Guaranty Association also does not provide coverage for:

- Unallocated annuity contracts; that is, contracts which are not issued to and owned by an individual and which guarantee rights to group contract holders, not individuals;
- Synthetic guaranteed interest contracts;
- Any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;
- Any policy of reinsurance unless an assumption certificate was issued;
- Interest rate yields that exceed an average rate;
- Any portion of a contract that provides dividends or experience rating credits.

## LIMITS ON AMOUNTS OF COVERAGE

The Act limits the Association to pay benefits as follows:

## LIFE AND ANNUITY BENEFITS

- 80% of what the life insurance company would owe under a life policy or annuity contract up to
- $100,000 in cash surrender values,
- $100,000 in present value of annuities, or
- $250,000 in life insurance death benefits.
- A maximum of $250,000 for any one insured life no matter how many policies and contracts there were with the same company, even if the policies provided different types of coverages.

## HEALTH BENEFITS

- A maximum of $200,000 of the contractual obligations that the health insurance company would owe were it not insolvent. The maximum may increase or decrease annually based upon changes in the health care cost component of the consumer price index.

## PREMIUM SURCHARGE

Member insurers are required to recoup assessments paid to the Association by way of a surcharge on premiums charged for health insurance policies to which the Act applies.

B-28

# TABLE OF CONTENTS

| Page | Title of Provision |
|------|---------------------|
| 10 | Assignment |
| 8 | Basis Of Computation |
| 10 | Beneficiary |
| 8 | Cash Values |
| 10 | Change Of Owner Or Beneficiary |
| 10 | Claims Of Creditors |
| 10 | Contract |
| 8 | Conversion Option |
| 10 | Correspondence |
| 8 | Deferment |
| 6 & 7 | Definitions |
| 7 | Endowment |
| 8 | Grace Period |
| 7 | Incontestability |
| 10 | Misstatement Of Age Or Sex |
| 10 | Nonparticipating |
| 8 | Option On Premium Default |
| 10 | Owner |
| 7 | Payment Of Death Benefit Proceeds |
| 10 | Policy Settlement |
| 3 | Policy Specifications |
| 7 | Premium Payment |
| 1 | Read Your Policy |
| 7 | Reinstatement |
| 9 | Renewal Option |
| 9 | Right To Change Premium |
| 1 | Right To Return Policy |
| 3 | Schedule Of Benefits And Premiums |
| 7 | Suicide |
| 8 | Surrender Of Policy |
| 5 | Table Of Guaranteed Values |
| 4 | Table Of Premiums |
| 9 | Termination |

See Supplemental Benefit Pages For Riders, If Any.

## POLICY SPECIFICATIONS

| | | | |
|---|---|---|---|
| Insured | Samuel M Everett | Policy Number | YMA0086144 |
| Face Amount | $1,000,000 | Date of Issue | 05/05/2005 |
| Sex | MALE | Age at Issue | 31 |
| Underwriting Class | Standard Non-Tobacco | | |

## SCHEDULE OF BENEFITS AND PREMIUMS

| Benefits | Benefit Amounts | Annual Premium | Years Payable |
|---|---|---|---|
| Life Insurance | $1,000,000 | $2,610.00 | 30 Years* |
| Total Initial Annual Premium | | $2,610.00 | |

Annual renewal premiums are shown in the table of premiums on page 4. Premiums payable other than annually are equal to a percentage of the annual premium. These percentages are shown on page 4. Premiums for this policy are initially payable at Monthly intervals. The first Monthly premium is $217.41.

*This is the level term period. Premiums cannot be changed during this period. [On the thirtieth policy anniversary and any later policy anniversary We have a right to change current premiums.] See the Right To Change Premium provision.

**Endowment Date.** We will pay the Cash Value of this policy to the Owner on the Initial Expiry Date if the Insured is living on that date and this policy is in force.

**Expiry Dates.** The Initial Expiry Date is 05/05/2035. Subsequent expiry dates will occur at the end of each one year renewable term period. The Final Expiry Date is 05/05/2069.

[**Conversion Option.** This policy may be exchanged for a new policy as specified in the Conversion Option provision. This option is available until the thirtieth policy anniversary, provided the Insured is age 75 or less on the date of exchange.]

ROP 2002AG-8                    YMA0086144

TABLE OF PREMIUMS

| Policy Year | Current Annual Life Insurance Premium | Maximum Annual Life Insurance Premium | Policy Year | Current Annual Life Insurance Premium | Maximum Annual Life Insurance Premium |
|---|---|---|---|---|---|
| 1-30 | $2,610.00 | $2,610.00 | 48 | $132,930.00 | $179,850.00 |
| 31 | $25,200.00 | $27,880.00 | 49 | $143,910.00 | $200,930.00 |
| 32 | $28,540.00 | $30,840.00 | 50 | $155,030.00 | $224,810.00 |
| 33 | $32,150.00 | $34,220.00 | 51 | $164,780.00 | $252,200.00 |
| 34 | $36,010.00 | $38,040.00 | 52 | $173,330.00 | $276,800.00 |
| 35 | $39,970.00 | $42,260.00 | 53 | $183,200.00 | $304,520.00 |
| 36 | $43,740.00 | $46,800.00 | 54 | $196,650.00 | $334,830.00 |
| 37 | $47,440.00 | $51,720.00 | 55 | $215,950.00 | $367,030.00 |
| 38 | $51,370.00 | $57,000.00 | 56 | $241,000.00 | $400,490.00 |
| 39 | $55,840.00 | $62,760.00 | 57 | $270,420.00 | $434,900.00 |
| 40 | $61,320.00 | $69,950.00 | 58 | $303,910.00 | $469,590.00 |
| 41 | $67,850.00 | $79,380.00 | 59 | $341,460.00 | $505,010.00 |
| 42 | $75,240.00 | $87,840.00 | 60 | $348,470.00 | $541,670.00 |
| 43 | $83,440.00 | $99,240.00 | 61 | $352,930.00 | $580,170.00 |
| 44 | $92,390.00 | $112,400.00 | 62 | $357,010.00 | $621,770.00 |
| 45 | $101,740.00 | $127,010.00 | 63 | $360,830.00 | $668,210.00 |
| 46 | $111,610.00 | $143,130.00 | 64 | $364,470.00 | $727,300.00 |
| 47 | $122,100.00 | $160,760.00 | | | |

The premiums shown above are annual life insurance premiums. Premiums payable other than annually are computed by multiplying the applicable annual premium by the premium percentages shown below.

| Premium Interval | Premium Percentage |
|---|---|
| Semi-annual | 50.00% |
| Quarterly | 25.00% |
| Monthly (Pre-authorized checking) | 8.33% |

B-31



**TABLE OF GUARANTEED VALUES**

The values and periods shown are for the face amount of this policy, based on the age of the insured on the date of issue.

The Net Single Premiums Cash Values and Paid-Up Life Insurance amounts referred to in this policy are based on the Commissioners 1980 Standard Ordinary Mortality Table.  The tables used are smoker or nonsmoker, age nearest birthday, in accordance with the Insured's Underwriting Class.  The interest rate used to compute the guaranteed values is 5.75% per year.  Deaths are assumed to occur at the end of the policy year of death.

| End of Policy Year | Cash Value | Paid-Up Life Insurance |
|---|---|---|
| 1 | $0.00 | $0.00 |
| 2 | $0.00 | $0.00 |
| 3 | $0.00 | $0.00 |
| 4 | $0.00 | $0.00 |
| 5 | $0.00 | $0.00 |
| 6 | $160.00 | $1,071.00 |
| 7 | $550.00 | $3,518.00 |
| 8 | $1,040.00 | $6,356.00 |
| 9 | $1,640.00 | $9,580.00 |
| 10 | $2,350.00 | $13,122.00 |
| 11 | $3,160.00 | $16,871.00 |
| 12 | $4,070.00 | $20,779.00 |
| 13 | $5,090.00 | $24,856.00 |
| 14 | $6,210.00 | $29,011.00 |
| 15 | $7,440.00 | $33,260.00 |
| 16 | $8,770.00 | $37,527.00 |
| 17 | $10,210.00 | $41,829.00 |
| 18 | $11,750.00 | $46,100.00 |
| 19 | $14,880.00 | $55,923.00 |
| 20 | $18,270.00 | $65,792.00 |
| 21 | $21,920.00 | $75,661.00 |
| 22 | $25,840.00 | $85,530.00 |
| 23 | $30,020.00 | $95,332.00 |
| 24 | $34,450.00 | $105,018.00 |
| 25 | $39,150.00 | $114,630.00 |
| 26 | $44,110.00 | $124,126.00 |
| 27 | $50,730.00 | $137,278.00 |
| 28 | $58,460.00 | $152,210.00 |
| 29 | $68,120.00 | $170,753.00 |
| 30 | $78,300.00 | $189,080.00 |
| 31 & LATER | 0 | 0 |

B-32

## DEFINITIONS

**Company Reference.** "We", "Our", "Us", or "Company" means American General Life Insurance Company.

**"You", "Your."** The words "You" or "Your" mean the Owner of this policy.

**Home Office.** Our office at 2727-A Allen Parkway, Houston, Texas 77019; Mailing Address P.O. Box 1931, Houston, Texas 77251.

**Written, In Writing.** A Written request or notice in acceptable form and content, which is signed and dated, and received at Our Home Office.

**Underwriting Class.** The Underwriting Class of this policy is shown in the Policy Specifications as one of the following terms:

**Preferred Plus.** The term "Preferred Plus" means the annual premium is based on the Insured being an exceptional mortality risk and a non-user of tobacco.

**Preferred Non-Tobacco.** The term "Preferred Non-Tobacco" means the annual premium is based on the Insured being a significantly better than average mortality risk and a non-user of tobacco.

**Standard Plus.** The term "Standard Plus" means the annual premium is based on the Insured being a better than average mortality risk and a non-user of tobacco.

**Standard Non-Tobacco.** The term "Standard Non-Tobacco" means the annual premium is based on the Insured being an average mortality risk and a non-user of tobacco.

**Preferred Tobacco.** The term "Preferred Tobacco" means the annual premium is based on the Insured being a better than average mortality risk and a user of tobacco.

**Standard Tobacco.** The term "Standard Tobacco" means the annual premium is based on the Insured being an average mortality risk and a user of tobacco.

**Special Non-Tobacco.** The term "Special Non-Tobacco" means "Substandard" or "Rated". This means an extra premium is being charged due to the Insured's health, occupation or avocation and the Insured is a non-user of tobacco.

**Special Tobacco.** The term "Special Tobacco" means "Substandard" or "Rated". This means an extra premium is being charged due to the Insured's health, occupation or avocation and the Insured is a user of tobacco.

**Juvenile.** The term "Juvenile" means the Insured's age was 17 or less on the Date of Issue. Annual premiums shown in Juvenile policies for insurance ages 18 and above are premiums for tobacco users. (Premiums are not classified on the basis of the Insured being a user or non-user of tobacco at ages 0 through 17.)

**Rates on Policy Anniversary Nearest Insured's 18th Birthday (For Insured's age 17 or Less on Date of Issue).** If the Insured's age, nearest birthday, is 17 or less on the Date of Issue of this policy, Tobacco rates will be used starting on the policy anniversary nearest the Insured's 18th birthday, except as follows: Prior to the anniversary nearest the Insured's 18th birthday, a Written statement, signed by the Insured may be submitted to the Company requesting that Non-Tobacco rates be made effective. The statement must include the date the Insured last used tobacco, or state that the Insured has never used tobacco, whichever applies. If the request is approved, Non-Tobacco rates will be made effective on the policy anniversary nearest the Insured's 18th birthday. Otherwise, Tobacco rates will apply. We will send a notice to the Owner at least 30 days prior to the policy anniversary nearest the Insured's 18th birthday that an application for Non-Tobacco rates may be submitted.

## DEFINITIONS (Continued)

**Age or attained age** means the Insured's age nearest birthday at the beginning of a policy year.

**Level Term Period** is the period of time during which premiums cannot change. The level term period is shown in the Policy Specifications.

**Policy months, policy years, and anniversaries.** The first policy year begins on the date of issue shown in the Policy Specifications. Subsequent policy months, years and anniversaries will be measured from that date.

## PAYMENT OF DEATH BENEFIT PROCEEDS

We will pay the face amount of this policy in a lump sum to the Insured's beneficiary if the Insured dies prior to the Final Expiry Date and while this policy is in force. Payment will be made after We receive due proof of the Insured's death. Due proof of the Insured's death will consist minimally of Our Company claim form completed by the beneficiary and a certified copy of the death certificate of the Insured. We will add to the face amount the part of any premium paid for the period beyond the policy month in which the Insured's death occurs.

If death occurs during the grace period of an unpaid premium, an amount equal to one month's premium will be deducted from the proceeds.

Interest as required by law will be added to the proceeds payable under this policy.

## ENDOWMENT

We will pay the Cash Value to the Owner on the Initial Expiry Date if the Insured is living and the policy is in force on that date.

## SUICIDE

In the event of the suicide of the Insured, while sane or insane, within two years from the date of issue, Our liability will be limited to the premiums paid.

## INCONTESTABILITY

Except for nonpayment of premiums, We will not contest this policy after it has been in force during the lifetime of the Insured for two years from the date of issue.

We will not contest a reinstatement after the reinstatement has been in force during the lifetime of the Insured for two years from the date of reinstatement. If We contest a reinstatement, We will contest only statements made in the reinstatement application.

## REINSTATEMENT

If this policy lapses, it may be reinstated within five years after the date of default. We will require the Insured to submit evidence of insurability that is satisfactory to Us.

Reinstatement will also be subject to (1) payment of the premium for the grace period with interest at the rate of 6% per year compounded annually plus the premium due for the current policy month, if this policy is reinstated after the level term period, or (2) payment of all overdue premiums with interest at the rate of 6% per year compounded annually, if this policy is reinstated before the end of the level term period.

## PREMIUM PAYMENT

The first premium is due on the date of issue and is payable at Our Home Office or to an authorized agent. Insurance will not take effect before this premium is paid. Later premiums are due and payable at the intervals and for the period shown on the Policy Specifications page, while the Insured is alive. Later premiums may be sent to Our Home Office or given to an authorized agent. A receipt signed by one of Our officers will be provided upon request. With Our consent, premiums may be paid at other intervals.

Any premium, after the first, not paid on or before its due date will be in default. Such due date will be the date of default.

## GRACE PERIOD

A 31 day grace period, without interest charge, is allowed for the payment of each premium due after the first. This policy will stay in force during this period. If the premium due is not paid before the end of the grace period, insurance will end and this policy will lapse unless kept in force under Option On Premium Default.

## CASH VALUE

The Cash Values for this policy are shown on page 5. These values are for the end of the policy year shown if premiums have been paid as required. The Cash Value at any time during a policy year depends on the amount of premium paid for that year and the time elapsed since the last policy anniversary.

## SURRENDER OF POLICY

The Owner may, by Written request, surrender this policy for its Cash Value. Surrender may occur at any time before the end of the level term period while the Insured is alive.

## DEFERMENT

We may defer payment of a policy surrender for the period permitted by law, up to six months. We will not defer a payment that is to be applied to pay premiums on policies in force with Us.

## OPTION ON PREMIUM DEFAULT

If this policy has a Cash Value it will stay in force from the due date of an unpaid premium as paid-up life insurance. The amount of paid-up life insurance will be such as the Cash Value on the date of default will buy when applied as a net single premium at the Insured's age on that date. In lieu of this benefit, if the Cash Value is less than $1,000, We reserve the right to pay the Cash Value to the Owner and terminate this policy.

While this policy is in force under this option, it may be surrendered for an amount equal to its Cash Value. The Cash Value within three months after the date of default will be the Cash Value on the date of default. The Cash Value after such three months will be the net single premium for the future insurance benefits. However, the Cash Value within 30 days after any anniversary date will not be less than the Cash Value on that anniversary.

Insurance kept in force under Option On Premium Default will exclude all riders except those with their own Option on Premium Default provision.

## BASIS OF COMPUTATION

The net single premiums and Cash Values referred to in this policy are based on the mortality tables and interest rates specified on page 5. A statement of the method of calculating Cash Values and Option On Premium Default has been filed with the insurance official of the state in which this policy is delivered. All values are equal to or greater than the values required by law in the state where this policy is delivered.

## CONVERSION OPTION

This option is available by Written request at any time during the period specified on the Policy Specifications page.

We will make a permanent individual life policy available for exchange. We, or one of Our affiliated companies, will issue the permanent individual policy. This policy may be exchanged for such policy on the Insured if no premium is in default and the Insured does not qualify for waiver of premium benefits under this policy. We will not require the Insured to submit evidence of insurability. The date of exchange will be the date requested by the Owner.

The new policy will be issued as of the date of exchange based on the Insured's age on that date and the premium rate then in use. We may offer a credit toward the first annual premium of the new policy. The face amount of the new policy may not exceed the face amount of this policy on the date of exchange. The Insured's Underwriting Class will be based on the Underwriting Class of this policy. The suicide and contestable periods of the new policy will be measured from the date of issue of this policy.

Any benefits or riders in force under this policy on the date of exchange and available for use with the new policy will be included in the new policy and will be subject to Our then current rules and rates. Any rider not in force under this policy may be included in the new policy only with Our consent.

## TERMINATION

This policy will terminate on the earliest of:

1. The death of the Insured;

2. Surrender of this policy, if this policy has a net surrender value;

3. The end of the grace period of an unpaid premium; or

4. The Final Expiry Date.

## RIGHT TO CHANGE PREMIUM

We reserve the right to change the premium for this policy on the policy anniversary specified in the Policy Specifications and on any later policy anniversary, subject to the following terms:

1. The premium will not exceed the applicable maximum premium shown on page 4.

2. Any change in premium will apply to all Insureds with the same benefits and provisions who have the same date of issue, age at issue, sex and Underwriting Class. We will not change the premium because of a change in an Insured's health, occupation or avocation.

3. Any change in premium will take effect only after 30 days' prior notice to the Owner of this policy.

4. Any change in premium will be based on changes in Our expectations of future investment earnings, mortality, persistency, administrative and maintenance expenses, premium taxes, corporate income taxes or interest rates. We will not recoup prior losses, if any, nor distribute prior gains, by changing the premium.

5. Any change in premium will be determined in accordance with procedures and standards on file with the Insurance Department.

This provision does not apply to any rider attached to this policy.

## RENEWAL OPTION

This policy may be renewed without evidence of insurability on each expiry date for an additional renewal term period. Renewal premiums are shown on page 4.

The first premium for a new term will be due at the end of the previous term. This policy will renew if this premium is paid within the grace period. Premiums for the new term will be due and payable at the intervals shown in the Policy Specifications.

No term period will extend beyond the Final Expiry Date shown in the Policy Specifications.

**NONPARTICIPATING**

This policy does not pay dividends.

**OWNER**

The Owner is as shown in the application unless changed. The Owner has all rights under this policy while the Insured is alive. These rights are subject to the consent of any living irrevocable beneficiary.

**BENEFICIARY**

The beneficiary or beneficiaries are as shown in the application unless changed. If no beneficiary survives the Insured, the Owner or the estate of the Owner will be the beneficiary. However, if a trust is the Owner and no beneficiary survives the Insured, the estate of the Insured will be the beneficiary.

**CHANGE OF OWNER OR BENEFICIARY**

The Owner may change the beneficiary or ownership at any time during the lifetime of the Insured and while this policy is in force, unless the previous designation provides otherwise. To do so, send a Written request to Our Home Office. When We record the change, it will take effect as of the date the Owner signed the notice, subject to any payment We make or other action We take before recording.

**CORRESPONDENCE**

Any request, notice or proof shall be filed with Our Home Office.

**ASSIGNMENT**

No assignment of this policy will be binding on Us until filed with Us In Writing and recorded by Us. No assignment will affect any payment We made before We recorded the assignment. We will not be responsible for the validity of an assignment.

All rights of the Owner and any revocable beneficiary are subject to the rights of any assignee on record with Us.

**POLICY SETTLEMENT**

In any settlement We may require the return of this policy.

**THE CONTRACT**

The entire contract consists of this policy, any riders and endorsements, the attached copy of the original application and any amendments or supplemental applications.

All statements in an application are representations and not warranties. No statement may be used in defense of a claim under this policy unless it appears in an application or amendment that is attached to and made part of this policy.

This policy may not be changed, nor may any of Our rights or requirements be waived, except In Writing by one of Our authorized officers.

**MISSTATEMENT OF AGE OR SEX**

If the Insured's age or sex has been misstated, any death benefit payable by Us will be what the premiums paid would have bought at the Insured's correct age and sex.

**CLAIMS OF CREDITORS**

All payments under this policy are exempt from the claims of creditors to the extent permitted by law. Payments may not be assigned or withdrawn without Our consent before becoming payable.

B-37

# AMERICAN GENERAL LIFE INSURANCE COMPANY

## TERMINAL ILLNESS ACCELERATED BENEFIT RIDER

**NOTICE: Benefits advanced under this Rider may or may not be taxable. As with all tax matters, the Owner should consult a personal tax advisor to assess the impact of this benefit.**

This rider has been added to and made a part of the policy to which it is attached.

**Right to Examine Rider.** You may return this rider within 20 days after receipt if you are not satisfied with it for any reason. The rider may be returned to us or to the agent through whom the policy was purchased. Upon return of this rider within the 20 day period, it will be void from the beginning.

**Terminal Illness Benefit: Accelerated Payment of a Portion of the Base Policy Death Benefit.** This is an accelerated death benefit rider. This rider provides for acceleration of payment of a portion of the base policy death benefit proceeds upon receipt of satisfactory evidence that the Insured under the base policy is terminally ill with 12 months or less to live.

**Entitlement to an Accelerated Benefit Under This Rider.** The benefit under this rider is payable to the Owner of the policy if:

1. The amount payable is $2,500 or more;

2. The Owner elects to exercise the option while the policy and this rider are in force;

3. The Owner provides a written statement signed by a physician providing the following information:

   a. The diagnosis; and

   b. A statement that:

      (1) The medical condition of the Insured is expected to result in death; and

      (2) Because of the nature and severity of the medical condition, the Insured's life expectancy is not greater than 12 months;

4. The Owner provides consent of any irrevocable beneficiary or assignee that benefits may be paid to the Owner;

5. The Owner provides, if requested by us, a consent form from any of the following:

   a. A spouse;

   b. The insured under this rider;

   c. Any beneficiary (other than as stated in paragraph 4); or

   d. Any other person if, in our discretion, such person's consent is needed to protect our interests;

6. Our right to a second opinion by a physician of our choice has been exercised or waived.

Payment of a benefit under this rider will be made only once at which time this rider will terminate. (For example, if after a benefit has been paid under this rider, the Insured recovers from a condition which was considered "terminal", and the Insured is again diagnosed as having a terminal illness, no additional benefit will be payable.)

**Limitations.** No benefit will be provided by this rider if terminal illness results from intentionally self-inflicted injuries.

This rider provides for the advance of a portion of the death benefit proceeds of the base policy. This is not meant to cause involuntarily access to proceeds ultimately payable to the beneficiary. Therefore, this benefit is not available:

1. If either the Owner or the Insured under this rider is required by law to use this benefit to meet the claims of creditors, whether in bankruptcy or otherwise; or

2. If either the Owner or the Insured under this rider is required by a government agency to use this benefit in order to apply for, obtain, or otherwise keep a government benefit or entitlement.

**Terminal Illness Accelerated Benefit Insured.** Only the Insured under the base policy is covered by this rider. No coverage is provided for the spouse, any children, or any other

91401-A                          Page 1 of 4



person covered by riders attached to the base policy.

**Terminal Illness Benefit Amount.** The Terminal Illness Benefit is a one time acceleration of up to 50% of the death benefit proceeds payable under the base policy, not to exceed $250,000.

The amount of coverage under this rider will change automatically with any change in the base policy benefit amount (subject to the $250,000 maximum). No accelerated benefit will be payable on the basis of any other rider attached to the policy.

**Deferred Premiums.** After payment of the Terminal Illness Benefit and if the insured is not eligible for Waiver of Premium (or Waiver of Monthly Deduction), we will defer premiums on the policy and any attached riders. The total of any premiums deferred and interest thereon will be assigned to us and deducted from the death benefit.

The amount of premium deferred on universal life policies containing a "Monthly Guarantee Premium" provision will be equal to the Guarantee Premium necessary to keep the policy in force to the next policy anniversary. The amount of premium deferred on universal life policies without a Monthly Guarantee Premium Provision will be equal to the sum of Monthly Deductions to the next policy anniversary. (See the policy provision entitled "How we calculate a Monthly Deduction.")

**Lien.** When an accelerated benefit is paid under this rider, a lien against future policy benefits will be established. The lien at the time the accelerated benefit is paid will be equal to the amount of such benefit; plus:

1.   Any deferred premiums; and

2.   Loan interest to the next policy anniversary, if due but unpaid (deferred loan interest); and

3.   An administrative fee not to exceed $250; and

4.   Interest to the next policy anniversary on the amount accelerated.

On each policy anniversary, any premiums, loan interest or interest on the lien that is due but unpaid will be added to the lien. The

amount of the lien and any policy loan will be deducted from the Death Benefit prior to payment.

At any time the lien plus any policy loan equals or exceeds the death benefit that would be payable if there were no indebtedness, this policy will lapse. However, at least 31 days prior notice must be mailed by us to your last known address and to the assignee of record, if any.

**Interest.** After payment of the Terminal Illness Benefit, interest will accrue daily on paid out benefits and any deferred premiums at an annual effective interest rate. Interest on the lien will be payable in advance on each policy anniversary. The interest rate will be determined at the end of each calendar year. Such rate will be effective on the policy anniversary occurring in the following calendar year.

The maximum interest rate will not exceed the greater of:

1.   The Moody's Corporate Bond Yield Average-Monthly Average Corporates (hereafter referred to as "Moody's Bond Yield Average") for the month of October preceding the calendar year for which the loan interest rate is determined; or

2.   The interest rate used to calculate Cash Values under the policy during the period for which the interest rate is being determined, plus 1%.

If the Moody's Bond Yield Average is no longer published, the rate used in its place will be established by law or regulation of the insurance supervisory official of the jurisdiction in which the policy is delivered. Any change in the interest rate will be subject to the following:

1.   No change in the interest rate will be made unless the difference in rates is 1/2% or more.

2.   If the difference is 1/2% or more and the legal maximum interest rate is lower, we will lower the interest rate to be equal to or less than the legal maximum interest rate.

3.   If the difference is 1/2% or more and the legal maximum interest rate is higher, we may increase the interest rate by at least

91401-A

B-39

1/2% but not more than the legal maximum interest rate.

We will notify the Owner of the initial interest rate. If there is a benefit that has been paid on this policy, we will give the Owner advance notice of any increase in the interest rate.

**After the Terminal Illness Benefit is Paid: Effect on this Rider and the Base Policy.** After the Terminal Illness Benefit is paid, this rider will terminate. A lien will be established against future benefits payable under the base policy. There will be no reduction or lien against any term or accidental death benefit riders attached to the base policy. The cash surrender value available for withdrawal, surrender or loan will be only that amount in excess of the lien plus any policy loan plus any unpaid interest due. Once the lien has been established, it cannot be repaid except through policy surrender, maturity or as a death claim.

Payment of the Terminal Illness Benefit does not cause premiums or monthly deductions to be waived. Any waiver benefit will be considered only if a rider providing waiver benefits is attached to the policy and the Insured qualifies for waiver benefits on the basis of the provisions of such rider.

**Termination.** This rider will terminate on the earliest of the following dates:

1. On the date the base policy terminates for any reason;

2. On the date a benefit under this rider is paid;

3. Upon written request from the Owner that this rider be terminated.

**Physician.** Physician means an individual who is licensed to practice medicine and treat illness or injury in the state in which treatment is received and who is acting within the scope of that license. Physician does not include:

1. The Insured under this rider;

2. The Owner;

3. A person who lives with the Owner or the Insured under this rider;

4. A person who is a member of the immediate family of the Owner or the Insured under this rider.

**Immediate Family.** The term "Immediate Family" means a spouse, child, brother, sister, parent or grandparent of:

1. The Owner or the Insured under this rider; or

2. A spouse of the Owner or the Insured under this rider.

**Terminal Illness.** Terminal Illness is a non-correctable medical condition that:

1. With reasonable medical certainty, will result in the death of the Insured under this rider in 12 months or less from the date of a licensed physician's certification of such Insured's life expectancy; and

2. Was first diagnosed on or after the Effective Date of this Rider.

**Proof of Terminal Illness.** Before payment of an accelerated benefit, we will require you provide us with proof satisfactory to us that the Rider Insured's life expectancy is 12 months or less from the date of application for the accelerated benefit. This proof will include the certification of a licensed physician. We reserve the right to obtain a second medical opinion at our expense, and to rely on such opinion if it differs.

**Reinstatement.** If the policy and this rider terminate at the same time, and the policy is reinstated, this rider will also be reinstated, subject to evidence of insurability satisfactory to the Company.

**Notice of Claim.** We must receive written notice of claim within 30 days after the date of diagnosis of the Terminal Illness or as soon as reasonably possible. The notice must be given to the Home Office. Notice should include the name of the Insured and the policy number.

**Time of Payment of Claims.** After we receive satisfactory written proof of terminal illness, and before the death of the Insured, we will pay the accelerated benefit then due.

B-40

**Payment of Claims.** The accelerated benefit will be paid to you. If the Insured dies before payment is made, this rider will terminate with no further value. We will pay the entire death benefit of the policy according to the beneficiary designation in effect at the time of payment.

**Legal Actions.** No legal action may be brought to recover on this rider within 60 days after written proof of terminal illness has been given.

**Policy Provisions Applicable.** This rider is subject to all the conditions and provisions of the policy, except as otherwise provided in this rider.

**Representations and Contestability.** All statements made in the application for this Rider by or on behalf of the Rider Insured will in the absence of fraud be deemed representations and not warranties. The validity of this Rider with respect to the Rider Insured will not be contestable after it has been in force

for 2 years during the lifetime of the Rider Insured.

Any increase in coverage effective after the Rider Date of Issue or any reinstatement will not be contestable after such increase or reinstatement has been in force during the lifetime of the Rider Insured for 2 years from its effective date. A contest will be based only on the application for the increase or reinstatement.

**Non-Participating.** No dividends are payable under this rider.

**Consideration.** The consideration for this rider is the application for the policy and this rider, and payment of sufficient premium to keep the base policy in force. There is no charge for this rider prior to the time application is made for acceleration of payment of a portion of base policy benefits due to terminal illness.

The effective date of this rider is the effective date of the policy unless a later date is shown on page 3 of the policy.

President

B-41

## AMERICAN GENERAL LIFE INSURANCE COMPANY

### ENDORSEMENT

This Endorsement has been added to and made a part of the Policy to which it is attached.

The following provision is hereby added to the policy.

**Surrender.** You may surrender your policy at any time. The surrender will be effective on the date we receive all of the necessary requirements, as follows:

1. A written request for surrender must be submitted, which includes:

   (a) The policy number;

   (b) The name of the Insured;

   (c) The signature of the Owner of the policy; and

   (d) The signature of any collateral assignee, irrevocable beneficiary, or other person having an interest in the policy through a legally binding document.

2. The policy must be returned, or, in lieu of the policy, a written statement indicating the policy has been lost or destroyed.

The necessary forms to surrender a policy will be furnished upon request. You may request such forms in writing, or you may call our Policyowners Service Department or your agent.

Upon receipt of the necessary requirements for surrender, we will pay to the Owner any surrender value or other moneys due as quickly as possible. Such payment will be made within 45 days from the date the surrender is effective, unless:

1. A later surrender date is requested by the Owner; or

2. The Company exercises its right, as stated in the policy, to delay payment of any values for a period not exceeding 6 months if such delay is necessary to assure the solvency of the Company.

The effective date of this Endorsement is the Date of Issue of the Policy.

President

L8853

B-42

Renewable Level Benefit Term Endowment Policy
Insurance Payable In Event Of Death Prior to Final Expiry Date

ß-43

Adjustable Premium
No Dividends

ROP 2002AG

YMA0086144

ROP 2002AG

## STATEMENT OF POLICY COST AND BENEFIT INFORMATION
## 30 YEAR RENEWABLE LEVEL BENEFIT TERM LIFE INSURANCE

American General Life Insurance Company
2727-A Allen Parkway
P.O. Box 1931
Houston, Texas 77210

AGENT Burton H Gavzer
6301 Owensmouth Ave Ste 700
Woodland Hills CA 91367-2265

POLICY NO YMA0086144        INSURED   Samuel M Everett        AGE 31

| POLICY YEAR | ANNUAL PREMIUM (CURRENT RATES) | ANNUAL PREMIUM (MAXIMUM RATES) | GUARANTEED CASH SURRENDER VALUE | GUARANTEED DEATH PAYMENT BEGIN. OF YR. |
|---|---|---|---|---|
| 1 | $2,610.00 | $2,610.00 | $0.00 | $1,000,000 |
| 2 | $2,610.00 | $2,610.00 | $0.00 | $1,000,000 |
| 3 | $2,610.00 | $2,610.00 | $0.00 | $1,000,000 |
| 4 | $2,610.00 | $2,610.00 | $0.00 | $1,000,000 |
| 5 | $2,610.00 | $2,610.00 | $0.00 | $1,000,000 |
| 6 | $2,610.00 | $2,610.00 | $160.00 | $1,000,000 |
| 7 | $2,610.00 | $2,610.00 | $550.00 | $1,000,000 |
| 8 | $2,610.00 | $2,610.00 | $1,040.00 | $1,000,000 |
| 9 | $2,610.00 | $2,610.00 | $1,640.00 | $1,000,000 |
| 10 | $2,610.00 | $2,610.00 | $2,350.00 | $1,000,000 |
| 11 | $2,610.00 | $2,610.00 | $3,160.00 | $1,000,000 |
| 12 | $2,610.00 | $2,610.00 | $4,070.00 | $1,000,000 |
| 13 | $2,610.00 | $2,610.00 | $5,090.00 | $1,000,000 |
| 14 | $2,610.00 | $2,610.00 | $6,210.00 | $1,000,000 |
| 15 | $2,610.00 | $2,610.00 | $7,440.00 | $1,000,000 |
| 16 | $2,610.00 | $2,610.00 | $8,770.00 | $1,000,000 |
| 17 | $2,610.00 | $2,610.00 | $10,210.00 | $1,000,000 |
| 18 | $2,610.00 | $2,610.00 | $11,750.00 | $1,000,000 |
| 19 | $2,610.00 | $2,610.00 | $14,880.00 | $1,000,000 |
| 20 | $2,610.00 | $2,610.00 | $18,270.00 | $1,000,000 |
| AT AGE 60 | $2,610.00 | $2,610.00 | $78,300.00 | $1,000,000 |
| AT AGE 62 | $28,540.00 | $30,840.00 | $0.00 | $1,000,000 |
| AT AGE 65 | $39,970.00 | $42,260.00 | $0.00 | $1,000,000 |

| COST INDEXES | LIFE INSUR.NET PAYMENT COST INDEX | | LIFE INSUR.SURRENDER COST INDEX | |
|---|---|---|---|---|
| | 10TH YR.* | 20TH YR.* | 10TH YR.* | 20TH YR.* |
| CURRENT RATES | 2.61 | 2.61 | 2.43 | 2.08 |
| MAXIMUM RATES | 2.61 | 2.61 | 2.43 | 2.08 |

The current premiums illustrated assume annual renewable premiums after the level term period.

The columns of this representation do not reflect the fact that, because of interest, a dollar in the future has less value than a dollar today.

*An explanation of the intended use of the life insurance cost indexes is explained in the life insurance Buyer's Guide.

Important Note -    During the thirty day period from the date of delivery of this policy, it
may be surrendered to the company for cancellation and a full refund
of any money paid.

B-44

5/12/2005

STATEMENT OF POLICY COST AND BENEFIT INFORMATION                    5/12/2005

AMERICAN GENERAL LIFE INS CO            FOR ADDITIONAL INFORMATION
2727-A ALLEN PARKWAY                    ABOUT THIS POLICY CONTACT:
HOUSTON, TEXAS 77019-2115              Burton H Gavzer
                                       6301 Owensmouth Ave Ste 700
                                       Woodland Hills CA 91367-2265


PREPARED FOR:    Samuel Everett

     TERMINAL ILLNESS BENEFIT (TIB) RIDER

     PROVIDES FOR A ONE-TIME PAYMENT IN ADVANCE OF THE DEATH BENEFIT
     UNDER THE BASE CONTRACT IF THE INSURED IS TERMINALLY ILL WITH 12
     MONTHS OR LESS TO LIVE.  THE AMOUNT ADVANCED WILL BE CARRIED AS A
     LIEN AGAINST FUTURE CONTRACT BENEFITS.  THERE IS NO CHARGE FOR THIS
     RIDER.

YMA0086144
91401

B-45

5/3/054:19PM
391988006083

Burton Gavzer
YMA0086144

**AIG** AMERICAN
GENERAL

**Amendment of Application**

**American General Life Insurance Company, Houston, TX**
Member of American International Group, Inc.
In this amendment, the "Company" refers to the insurance company whose name is shown above.
The insurance company shown above is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company is responsible for such obligations or payments.

**Proposed Insured**

| | | | | |
|---|---|---|---|---|
| Proposed Insured | **Samuel M Everett** | Date of birth | 06/01/1974 Social Security # | 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 |

The application to the company, dated _____ is amended as follows:

### Issued with plan as ROP 2004 30 year

I agree that: (1) these changes shall be an amendment to and form a part of the original application and policy; and (2) such changes shall be binding on any person who shall have or claim any interest under such policy.

X Owner _____Samuel Everett_____    Date _May 2, 2005_

Signed at (City, State) _____

X Witness _____[signature]_____    Date _05-02-2005_

X Proposed Insured _____[signature]_____    Date _05/02/05_
    (If under age 15, signature of parent or guardian)

**Show title of officer if signing for the business.**

AGLC 0017-46

0403

B-46

B-47

**US bancorp.**
*Five Star Service Guaranteed*

---
**Insurance Services, LLC**

May 17, 2005

Samuel M Everett
7940 Blossom Lane
Lemon Grove, CA   91945

Dear Valued Customer:

Thank you for choosing U.S. Bancorp Insurance Services, LLC, an affliate of U.S. Bank, to help you meet your insurance needs.

Your coverage, underwritten by American General Life, is outlined in the enclosed policy. Please read this document carefully before filing it away in a safe place.

For your convenience your monthly payment of $217.41 will be automatically deducted from your bank account. The monthly payment transaction will occur on the **5th** of each month beginning in May.

If you have any questions regarding your policy, please call your licensed representative, **Burton Gavzer** at 1.888.202.4272 ext. 166, Monday through Friday between 10:00 a.m. and 7:00 p.m., Central Time

Once again, thank you for allowing us to assist you with your insurance needs.

Sincerely,

*Evonne Hirtz*

Evonne Hirtz, CFP ®
Vice President
US Bancorp Insurance Services, LLC

**IMPORTANT NOTICE:** Some states require the signed acknowledgment of the receipt of your policy. Please sign the enclosed policy delivery receipt and return it in the self-addressed stamped envelope provided for your convenience.

| Not a Deposit | Not FDIC Insured | Not Guaranteed by the Bank |
|---|---|---|
| Not Insured by any Federal Government Agency | | |

Insurance products are available through U.S. Bancorp Insurance Services, LLC, in Montana U.S. Bancorp Insurance Services of Montana, Inc., and in Wyoming U.S. Bancorp Insurance & Investments, Inc. All are licensed insurance agencies and subsidiaries of U.S. Bancorp and affiliates of U.S. Bank. Policies are underwritten by unaffiliated insurance companies and may not be available in all states. CA Agency Number OE24641.

B-48

B - 49

 

*Insurance Service Center for:*

**AMERICAN GENERAL LIFE
INSURANCE COMPANY**

April 03, 2006

NIKETA EVERETT
6027 RACE ST.
PHILADELPHIA PA 19137

| | |
|---|---|
| Contract Number: | YMA0086144 |
| Insured: | SAMUEL M EVERETT |
| Claim Number: | 06D01019/AGL |

Dear MRS EVERETT:

We are sorry to learn of the loss of SAMUEL M EVERETT.    Please extend our sincere sympathy to all the members of the family.  In order to process this claim, we will need the following:

1)  Enclosed Claimant's Statement completed by the beneficiary.  ✓

2)  CERTIFIED Death Certificate. ✓

2)  The original policy contract returned to us.

4)  HIPPA Authorization and Statement of Medical History. ✓

Sincerely,
INDIVIDUAL CLAIMS DEPARTMENT

*March 29, 2006*

3736

AGL

B-50



**AIG** **AMERICAN GENERAL**

*Insurance Service Center for:*

**American General Life
Insurance Company**

April 25, 2006

Niketa Everett
6027 Race St.
Philadelphia, PA 19139

RE: INSURED: Samuel Everett
POLICY NO. YMA0086144

Dear Mrs. Everett,

This letter is in regard to the life insurance claim on Samuel Everett.

Since this claim was incurred within two years of the policy being issued it will be necessary for us to conduct an investigation into Mr. Everett's medical and financial background. We have hired an investigative agency, International Claims Specialists (ICS) , to conduct this investigation for us. They should have contacted you as they will have some questions to ask of you. If they have yet to contact you please call me at the number below as soon as possible. As part of our investigation we will be obtaining medical records from any providers that had treated Mr. Everett in the past. The length of the investigation will depend on how fast these providers can release their records to us.

If you have any questions please call me at 1-800-247-8837, ext. 2031.

Sincerely,

Phillip L. Evans Jr.
Individual Claims Department

CC:
1H025        GAVZER BURTON H
1YF98        HALEN DONALD M

**American General Life Insurance Company**
*Member of American International Group, Inc.*
Service Center • P.O. Box 4443 • Houston, TX 77210-4373 • 1.800.247-8837 • Fax 713-620-6916

B-51



*Insurance Service Center for:*

American General Life
Life Insurance Company

November 20, 2006


Andrew I. Roseman, Esq.
Shaw and Roseman, P.C.
1129 Spruce Street
Suite 200
Philadelphia, PA 19107


RE: INSURED:      Samuel Everett
APPLICATION NO.: YMA0086144

Dear Mr. Roseman,

This letter is in regard to the life insurance claim on Samuel Everett.

Mr. Everett's policy was issued on May 5, 2005 based on the application he completed and
signed on March 22, 2005. On the application were the following questions:

On Part A of the application, question 10 F. asks, "Has the proposed insured ever been
convicted of or pled guilty or no contest to a felony or does he or she have any such charge
pending against him or her? (If yes, list date, state and felony.)" Mr. Everett's answer to this
question on the application was "No".

However, in reviewing records from the District Court of Maryland, Wicomico County, it was
discovered that Mr. Everett was convicted of assault with intent to murder on June 2, 1993.
We also reviewed records from the Philadelphia County Criminal Court and found that Mr.
Everett pled guilty to manufacturing, delivery and possession with intent to distribute a
controlled, dangerous substance on January 17, 2001, as well as criminal conspiracy.

In addition, on Part A of the application, Mr. Everett's personal income is listed as
$60,000.00. However, in reviewing his 2004 tax return, the total income listed is -$2,627.00.
We also found that Mr. Everett had an income of $28,000.00 listed on his Profit or Loss from
Business tax form of 2004. Both of these appear to be inconsistent with Mr. Everett's
disclosed income in March 2005.

Had our Underwriting Department been aware of the above information at the time Mr.
Everett completed the application, they would not have issued the policy as applied for.
Therefore, due to the material misrepresentation of pertinent information on the application,

American General Life Insurance Company
*Member of American International Group, Inc.*
Service Center • P.O. Box 4443 • Houston, TX 77210-4373 • 1.800.247-8837 • Fax 713-620-6916

2

B-52

11/20/2006  15:50    7193311275                    CLAIMS                              PAGE  03/03

 

AMERICAN
GENERAL

*Insurance Service Center for:*

**American General Life**
**Life Insurance Company**

we are rescinding Mr. Everett's policy, making this coverage null and void from its inception date. A premium refund check, in the amount of $2391.51, will be sent to you under separate cover.

Our decision is based on the facts as we know them. If there is additional information that may materially affect this decision, please have it submitted and we will be pleased to give it every consideration. The American General Life Insurance Company reserves any and all rights and defenses which it has or may have under or in connection with this policy.

If you have any questions please call me at 1-800-247-8837, ext. 2031.

Sincerely,

Phillip L. Evans Jr.
Individual Claims Department

CC:

**American General Life Insurance Company**
*Member of American International Group, Inc.*
Service Center • P.O. Box 1443 • Houston, TX 77210-4373 • 1.800.247-8837 • Fax 713-620-6916

3

B-53

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "C"



IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NIKETA EVERETT, Individually and as Beneficiary of Samuel M. Everett, deceased 4238 Richmond Street Philadelphia, Pa  19137 | : : : : : | CIVIL ACTION |
| vs. | : : | |
| AMERICAN GENERAL LIFE INSURANCE COMPANY 2727-A Allen Parkway Houston, TX   77019          and U.S. BANCORP INSURANCE SERVICES, LLC 809 S. 60th Street, Suite 205 West Allis, WI   53214 | : : : : : : : : : : | No.:  08 CV 2426 |

**O R D E R**

AND NOW, this               day of                    2008, upon

consideration of Plaintiff's Application To Retain Jurisdiction And Enjoin Prosecution Of

Related Case and Defendants response thereto, it is hereby **ORDERED** and **DECREED** that

Plaintiff's Application is **GRANTED.**

_____
                                    J.

C-1

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NIKETA EVERETT, Individually and : <br> Beneficiary of Samuel M. Everett, deceased : <br> 4238 Richmond Street : <br> Philadelphia, Pa 19137 : <br> : <br>     vs. : <br> : <br> AMERICAN GENERAL LIFE : <br> INSURANCE COMPANY : <br> 2727-A Allen Parkway : <br> Houston, TX 77019 : <br>    and : <br> U.S. BANCORP INSURANCE : <br> SERVICES, LLC : <br> 809 S. 60th Street, Suite 205 : <br> West Allis, WI 53214 : | CIVIL ACTION <br><br><br><br><br><br><br><br><br><br> No.: |

## PLAINTIFF'S APPLICATION TO RETAIN JURISDICTION
## AND ENJOIN PROSECUTION OF RELATED CASE

Plaintiff, Niketa Everett, individually and as beneficiary of Samuel M. Everett, deceased, hereby applies to the Court for relief and costs as follows:

1.  This matter arises from Plaintiff's claim for benefits on a policy of life insurance issued by Defendants.

2.  Plaintiff and Plaintiff's decedent have at all times maintained citizenship in the Commonwealth of Pennsylvania.

3.  Defendants, American General and U.S. Bancorp are citizens of Texas and Wisconsin respectively.

C-2

FILED    MAY 23 2008

4.  In 2005 Plaintiff and Plaintiff's decedent were residing in California when they accepted a solicitation from U.S. Bancorp to issue a life insurance policy.  The policy was underwritten by Defendant, American General in the amount of $1,000,000.00.

5.  In March 2006 having resumed residency in Philadelphia, Plaintiff's decedent was shot and killed.

6.  Plaintiff made a timely claim for benefits.

7.  On November 20, 2006 Plaintiff was informed that her claim was being denied.

8.  The basis of Defendants' denial was an alleged misrepresentation in the policy Application leading Defendant to rescind the policy in November 2006.  Defendants' rescission was purportedly based on a failure to disclose felony convictions and a misstatement as to decedent's income.

9.  Following the denial counsel for Plaintiff was retained to represent Plaintiff's interests.

10.  On May 25, 2007, counsel for Plaintiff requested that Defendants provide documentation supporting its contentions.

11.  Counsel for Plaintiff and Defendants' claims department exchanged correspondence from May 2006 to February 14, 2008 when Defendants representative informed that the matter was being forwarded to Defendants' legal department for further review.  See correspondence attached hereto as Exhibit "A".

12.  Counsel for Plaintiff provided Defendant with a copy of the 3rd Circuit Court of Appeals Opinion in *Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517 (3rd Cir. 2004).

13.  The Defendant in *Justofin* voided a life insurance policy due to the insured's failure to disclose a complete medical history.  The Appellate Court found that the policy was not void as

C-3